# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### LUBBOCK DIVISION

| | |
|---|---|
| JOE LARA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LUBBOCK HEART HOSPITAL, LLC, dba LUBBOCK HEART & SURGICAL HOSPITAL,<br><br>Defendant. | **Case No.: 5:23-cv-00036**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Joe Lara ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Lubbock Heart Hospital, LLC, dba Lubbock Heart & Surgical Hospital ("Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, owners, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1.      This class action arises from Defendant's failure to protect highly sensitive data.

2.      Defendant, Lubbock Heart Hospital, LLC, is a physician-owned hospital incorporated in Delaware.

3.      As such, Defendant stores a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI")—together "PII/PHI"—about its

current and former patients. But Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4.      It is unknown for precisely how long the cybercriminals had access to Defendant's network before the breach was discovered. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to patients' PII/PHI.

5.      On information and belief, cybercriminals were able to breach Defendant's inadequate systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII/PHI. In short, Defendant's failures placed the Class's PII/PHI in a vulnerable position—rendering them easy targets for cybercriminals.

6.      Plaintiff is a Data Breach victim, having received a legally required data breach notice from the Defndant. He brings this class action on behalf of himself, and all others harmed by Defendant's misconduct.

## PARTIES

7.      Plaintiff, Joe Lara, is natural person and citizen of Texas. He resides in Lubbock, Texas, where he intends to remain.

8.      Defendant, Lubbock Heart Hospital, LLC, is a Delaware  LLC with its principal place of business at 810 N Loop 289, Lubbock, Texas 79416.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of

interest and costs. Plaintiff and Defendant are citizens of different states. There are over 100 putative Class Members.

10.     This Court has personal jurisdiction over Defendant because it is headquartered in Lubbock Texas, regularly conducts business in Texas, and has sufficient minimum contacts in Texas.

11.     Venue is proper in this Court because Defendant's principal office is in Lubbock, Texas in the Lubbock Division of the Northern District of Texas, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

### *Defendant Collected and Stored the PII/PHI of Plaintiff and the Class*

12.     Defendant is a physician-owned hospital that has been in business since 2003.[1] It advertises itself as "more than a procedural hospital system."[2]

13.     As part of its business, Defendant receives and maintains the PII/PHI of thousands of current and former patients. In collecting and maintaining the PII/PHI, Defendant implicitly agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII/PHI.

14.     Defendant clearly recognizes these duties as evidenced by the following statements on its website:

---

[1] *Home Page*, LUBBOCK HEART & SURGICAL HOSPITAL, https://lubbockheart.com/ (last visited Feb. 14, 2023).
[2] *Id.*

-3-

    a.      "Lubbock Heart & Surgical Hospital is committed to protecting the security and privacy of our patients' information."[3]

    b.      "Lubbock Heart & Surgical Hospital protects covered health and medical information as required by HIPAA and applicable state law."[4]

    c.      "We are required by law to: Maintain the privacy of protected health information; Give you this notice of our legal duties and privacy practices regarding health information about you."[5]

15.     Under state and federal law, businesses like Defendant have duties to protect patients' PII/PHI and to notify them about breaches.

***Defendant's Data Breach***

16.     On July 11, 2022, Defendant was hacked—exposing the PII/PHI of at least 23,379 people.[6] Upon information and belief, these 23,379 persons include Defendant's current and former patients.[7]

17.     The hack lasted for two days.[8] Defendant admits that "an unauthorized party accessed some of our systems" with the intention "to copy certain files."[9]

18.     Because of Defendant's Data Breach, at least the following types of PII/PHI were compromised:

---

[3] *Notice of a Data Security Incident*, LUBBOCK HEART & SURGICAL HOSPITAL, https://lubbockheart.com/wp-content/uploads/2022/12/FINAL-Phase-2-Subsitute-Notice-Web-Posting-Lubbock-Heart.docx.pdf (last visited Feb. 14, 2023).

[4] *Privacy Policy*, LUBBOCK HEART & SURGICAL HOSPITAL, https://lubbockheart.com/privacy-policy/ (last visited Feb. 14, 2023).

[5] *HIPAA Notice of Privacy Practices*, LUBBOCK HEART & SURGICAL HOSPITAL, https://lubbockheart.com/wp-content/uploads/2020/04/Notice-of-Privacy-Policy.pdf (last visited Feb. 14, 2023).

[6] *Cases Currently Under Investigation*, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES OFFICE FOR CIVIL RIGHTS, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last visited Feb. 14, 2023).

[7] *Notice of a Data Security Incident*, LUBBOCK HEART & SURGICAL HOSPITAL, https://lubbockheart.com/wp-content/uploads/2022/12/FINAL-Phase-2-Subsitute-Notice-Web-Posting-Lubbock-Heart.docx.pdf (last visited Feb. 14, 2023).

[8] *Id*.

[9] *Id*.

a.      names;

b.      contact information;

c.      demographic information;

d.      dates of birth;

e.      Social Security numbers;

f.      diagnosis information;

g.      treatment information;

h.      prescription information;

i.      Medical Record numbers;

j.      provider names;

k.      dates of service; and

l.      health insurance information.[10]

19.     And yet, Defendant waited until September 9, 2022, before it began notifying the class—nearly *two months* after the Data Breach.[11]

20.     It then took until December 19, 2022 to complete its review of the Data Breach.[12]

21.     Thus, Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

22.     And when Defendant did notify Plaintiff and the Class of the Data Breach, Defendant acknowledged that their Data Breach created a present, continuing, and significant risk of suffering identity theft, warning Plaintiff and the Class to "review the statements they receive

---

[10] *Id.*

[11] Mateo Rosiles, *Lubbock heart hospital updates patients on July data breach*, LUBBOCK AVALANCHE-JOURNAL (Dec. 31, 2022), https://www.lubbockonline.com/story/news/local/2022/12/31/lubbock-heart-hospital-updates-patients-on-july-data-breach/69767917007/.

[12] *Id.*

from their health insurers and contact the insurer immediately if they see services they did not receive."[13]

23.    Simply put, Defendant failed its duties when its inadequate security practices placed the sensitive PII/PHI of Plaintiff and Class Members into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class Members.

24.    Still, Defendant declares that it "take[s] this incident very seriously and sincerely regret[s] any concern this may cause."[14] Regardless, Defendant's Data Breach caused widespread injury and monetary damages.

25.    Since the breach, Defendant declared that is has "enhanced our security safeguards and technical measures to further protect and monitor our systems."[15]  But this is too little too late. Simply put, these measures—which Defendant now recognizes as necessary—should have been implemented *before* the Data Breach.

26.    Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII/PHI. And on information and belief, Defendant failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures.

27.    Further, the Defendant's "Notice of a Data Security Incident" shows that Defendant cannot—or will not—determine the full scope of the Data Breach, as Defendant has been unable to determine precisely what information was stolen and when. Specifically, Defendant admits that

---

[13] *Notice of a Data Security Incident*, LUBBOCK HEART & SURGICAL HOSPITAL, https://lubbockheart.com/wp-content/uploads/2022/12/FINAL-Phase-2-Subsitute-Notice-Web-Posting-Lubbock-Heart.docx.pdf (last visited Feb. 14, 2023).
[14] *Id.*
[15] Alana Edgin, *Lubbock Heart & Surgical Hospital announces July data breach, patient hotline*, LUBBOCK AVALANCHE-JOURNAL (Sept. 9, 2022) https://www.lubbockonline.com/story/news/2022/09/09/lubbock-heart-hospital-addresses-july-data-breach-patient-hotline/68296892007/.

"[o]ur investigation could not determine whether the unauthorized party did, in fact, access or copy any files but was unable to rule it out."[16]

28.    Defendant has done little to remedy its Data Breach. Defendant offered "complimentary credit monitoring and identity protection services"—but *only* to those "patients whose Social Security numbers may have been involved."[17] But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class Members for the injuries that Defendant inflicted upon them—especially since Defendant limited its offering of credit and identity services to only a select subgroup of injured patients.

***Plaintiff Joe Lara's Experiences and Injuries***

29.    Plaintiff Joe Lara is a former patient of Defendant—and thus he was injured by Defendant's Data Breach.

30.    As a condition of being Defendant's patient, Plaintiff provided Defendant with his PII/PHI. Plaintiff reasonably understood that a portion of the funds he paid to Defendant for medical services would be used to pay for adequate cybersecurity and protection of his PII/PHI.

31.    In doing so, Plaintiff trusted that Defendant would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's PII/PHI and has a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure.

32.    Defendant used Plaintiff's PII/PHI to facilitate its provision of services and to collect payment for those services.

---

[16] *Notice of a Data Security Incident*, LUBBOCK HEART & SURGICAL HOSPITAL, https://lubbockheart.com/wp-content/uploads/2022/12/FINAL-Phase-2-Subsitute-Notice-Web-Posting-Lubbock-Heart.docx.pdf (last visited Feb. 14, 2023).
[17] *Id.*

33.    Plaintiff does not recall ever learning that his information was compromised in a data breach incident—other than the breach at issue here.

34.    Plaintiff received a Notice of Data Breach in late January 2023.

35.    Plaintiff has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from fraud and identity theft. After all, Defendant directed Plaintiff himself to take those steps in its breach notice.

36.    Plaintiff fears for his personal financial security and worries about what information was exposed in the Data Breach.

37.    Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

38.    Plaintiff suffered actual injury from the exposure (and likely theft) of his PII/PHI—which violates his rights to privacy.

39.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII/PHI. PII/PHI is a form of intangible property—property that Defendant was required to adequately protect. It is valuable, which is precisely why criminals want to steal it.

40.    Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's PII/PHI in the hands of criminals.

41.    Because of the Data Breach, Plaintiff has and will spend considerable amounts of time and money to try and mitigate his injuries.

42.    Today, Plaintiff has a continuing interest in ensuring that his PII/PHI—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

43.    Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

   a.    loss of the opportunity to control how their PII/PHI is used;

   b.    diminution in value of their PII/PHI;

   c.    compromise and continuing publication of their PII/PHI;

   d.    out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

   e.    lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from fraud and identity theft;

   f.    delay in receipt of tax refund monies;

   g.    unauthorized use of their stolen PII/PHI; and

   h.    continued risk to their PII/PHI—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the PII/PHI.

44.     Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

45.     The value of Plaintiff and Class's PII/PHI on the black market is considerable. Stolen PII/PHI trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "dark web"—further exposing the information.

46.     It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell and/or criminally use the PII/PHI far and wide.

47.     One way that criminals profit from stolen PII/PHI is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data— first the stolen PII/PHI, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

48.     The development of "Fullz" packages means that the PII/PHI exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

49.     In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII/PHI stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen PII/PHI is being misused, and that such misuse is fairly traceable to the Data Breach.

50.     Defendant disclosed the PII/PHI of Plaintiff and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII/PHI of Plaintiff and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

51.     Defendant's failure to promptly and properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII/PHI and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

52.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and or data breaches in recent years.

53.     In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020.[18] Of the 1,862 recorded data breaches, 330 of them, or 17.7% were in the medical or healthcare industry.[19] Those 330 reported breaches exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[20]

54.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller

---

[18] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.
[19] *Id*.
[20] *Id*.

municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[21]

55.    In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.[22]

56.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

**Defendant Failed to Follow FTC Guidelines**

57.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

58.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[23]  The FTC declared that, *inter alia*, businesses must:

        a.    protect the personal customer information that they keep;

        b.    properly dispose of personal information that is no longer needed;

        c.    encrypt information stored on computer networks;

        d.    understand their network's vulnerabilities; and

        e.    implement policies to correct security problems.

---

[21] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.
[22] *See* Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited July 31, 2022).
[23] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

59.    The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

60.    Furthermore, the FTC explains that companies must:

a.    not maintain information longer than is needed to authorize a transaction;

b.    limit access to sensitive data;

c.    require complex passwords to be used on networks;

d.    use industry-tested methods for security;

e.    monitor for suspicious activity on the network; and

f.    verify that third-party service providers use reasonable security measures.

61.    The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

62.    In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to current and former patients' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

63.    Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-

malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

64.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

65.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

66.    These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

**Defendant Violated HIPAA**

67.    HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[24]

---

[24] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

68.    HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[25]

69.    The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a.    failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.    failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c.    failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.    failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.    failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to

---

[25] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.    failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.    failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.    failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.    failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

70.    Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

71.    Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII/PHI was compromised in the Data Breach discovered by Lubbock Heart Hospital, LLC (dba Lubbock Heart & Surgical Hospital) in July 2022.

72.    Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

73.    Plaintiff reserves the right to amend the class definition.

74.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

75.    Ascertainability. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

76.    Numerosity. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least 23,379 members.

77.    Commonality and Predominance. Plaintiff and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class members—for which a class wide proceeding can answer for all Class members. In fact, a class wide proceeding is necessary to answer the following questions:

     a.    if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII/PHI;

     b.    if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

-17-

c.    if Defendant were negligent in maintaining, protecting, and securing PII/PHI;

d.    if Defendant breached contract promises to safeguard Plaintiff and the Class's PII/PHI;

e.    if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f.    if Defendant's Breach Notice was reasonable;

g.    if the Data Breach caused Plaintiff and the Class injuries;

h.    what the proper damages measure is; and

i.    if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

78.    <u>Typicality.</u> Plaintiff's claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

79.    <u>Adequacy</u>. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

80.    <u>Superiority.</u> A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class members, on an individual basis, to obtain effective redress for their injuries. Not only would

individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

81.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

82.     Plaintiff and the Class entrusted their PII/PHI to Defendant on the premise and with the understanding that Defendant would safeguard their PII/PHI, use their PII/PHI for business purposes only, and/or not disclose their PII/PHI to unauthorized third parties.

83.     Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII/PHI in a data breach. And here, that foreseeable danger came to pass.

84.     Defendant has full knowledge of the sensitivity of the PII/PHI and the types of harm that Plaintiff and the Class could and would suffer if their PII/PHI was wrongfully disclosed.

85.     Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class Members' PII/PHI.

86.     Defendant owed—to Plaintiff and Class Members—at least the following duties to:

a.    exercise reasonable care in handling and using the PII/PHI in its care and custody;

b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c.    promptly detect attempts at unauthorized access;

d.    notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their PII.

87.    Also, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

88.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII/PHI it was no longer required to retain under applicable regulations.

89.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII/PHI of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

90.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII/PHI, a necessary part of obtaining medical services from Defendant.

91. The risk that unauthorized persons would attempt to gain access to the PII/PHI and misuse it was foreseeable. Given that Defendant hold vast amounts of PII/PHI, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII/PHI —whether by malware or otherwise.

92. PII/PHI is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII/PHI of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

93. Defendant improperly and inadequately safeguarded the PII/PHI of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

94. Defendant breached these duties as evidenced by the Data Breach.

95. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff and Class Members' PII/PHI by:

    a. disclosing and providing access to this information to third parties and

    b. failing to properly supervise both the way the PII/PHI was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

96. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

97.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

98.    Defendant has admitted that the PII/PHI of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

99.    As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

100.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
### Negligence *per se*
### (On Behalf of Plaintiff and the Class)

101.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

102.    Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members' PII.

103.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as

Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class Members' sensitive PII.

104.    Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

105.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

106.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

107.    But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

108.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII and PHI.

109.    Similarly, under HIPAA, Defendant had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiff's and Class Members' PHI.

110.    Defendant violated its duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed supra. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of PHI that Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

111.    Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

112.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## THIRD CAUSE OF ACTION
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

113.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

114.    Plaintiff and Class Members were required to provide their PII/PHI to Defendant as a condition of receiving medical services provided by Defendant. Plaintiff and Class Members provided their PII/PHI to Defendant or its third-party agents in exchange for Defendant's medical services and reasonably believed that the funds they paid Defendant for those medical services included amounts towards protecting the security of their PII/PHI.

115.    Plaintiff and the Class Members accepted Defendant's offers by disclosing their PII/PHI to Defendant or its third-party agents in exchange for medical services and by paying for those medical services.

116.    In turn, and through internal policies, Defendant agreed to protect and not disclose the PII/PHI to unauthorized persons.

117.    In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiff's and Class Member's PII/PHI.

118.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their PII/PHI.

119.    After all, Plaintiff and Class Members would not have entrusted their PII/PHI to Defendant or its third-party agents in the absence of such an agreement with Defendant.

120.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

121.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

122.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

123.    Defendant materially breached the contracts it entered with Plaintiff and Class Members by:

    a.      failing to safeguard their information;

b.    failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c.    failing to comply with industry standards;

d.    failing to comply with the legal obligations necessarily incorporated into the agreements; and

e.    failing to ensure the confidentiality and integrity of the electronic PII/PHI that Defendant created, received, maintained, and transmitted.

124.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

125.    Defendant's material breaches were the direct and proximate cause of Plaintiff and Class Members' injuries (as detailed *supra*).

126.    Plaintiff and Class Members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**FOURTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

127.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

128.    Given the relationship between Defendant and Plaintiff and Class Members, where Defendant became guardian of Plaintiff and Class Members' PII/PHI, Defendant became a fiduciary by its undertaking and guardianship of the PII/PHI, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff and Class Members' PII/PHI; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

129.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendant's relationship with them—especially to secure their PII/PHI.

130.    Because of the highly sensitive nature of the PII/PHI, Plaintiff and Class Members would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII/PHI had they known the reality of Defendant's inadequate data security practices.

131.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiff and Class Members' PII/PHI.

132.    Defendant also breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

133.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## FIFTH CAUSE OF ACTION
### Intrusion upon Seclusion
### (On Behalf of Plaintiff and the Class)

134.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

135.    Texas recognizes the tort of Intrusion upon Seclusion, and adopts the formulation of that tort found in the Restatement (Second) of Torts, which states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts§ 652B (1977).

136.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII/PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

137.    Defendant owed a duty to its current and former patients, including Plaintiff and the Class, to keep this information confidential.

138.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class Members' PII/PHI is highly offensive to a reasonable person.

139.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

140.    The Data Breach constitutes an intentional interference with Plaintiff and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

141.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

142.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

143.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

144.    As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed supra).

145.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII/PHI are still maintained by Defendant with their inadequate cybersecurity system and policies.

146.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII/PHI of Plaintiff and the Class.

147.    In addition to injunctive relief, Plaintiff, on behalf of himself and the other Class Members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

### SIXTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

148.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

149.    This claim is pleaded in the alternative to the breach of implied contract claim.

150.    Plaintiff and Class Members conferred a benefit upon Defendant. Defendant benefitted from using their PII/PHI to obtain payment and facilitate its provision of services.

151.    Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class Members. And Defendant benefited from receiving Plaintiff and Class Members' PII/PHI, as this was used to obtain payment and facilitate its provision of services.

152.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII/PHI.

153.    Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

154.    Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff and Class Members' payment because Defendant failed to adequately protect their PII/PHI.

155.    Plaintiff and Class Members have no adequate remedy at law.

156.    Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

**PRAYER FOR RELIEF**

Plaintiff and Class Members respectfully requests judgment against Defendant and that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.     Awarding equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.     Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.     Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

E.     Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

F.     Awarding attorneys' fees and costs, as allowed by law;

G.     Awarding prejudgment and post-judgment interest, as provided by law;

H.     Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

I.     Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.


Date: February 21, 2023                              Respectfully submitted,


                                        /s/ Joe Kendall
                                        JOE KENDALL
                                        Texas Bar No. 11260700
                                        **KENDALL LAW GROUP, PLLC**
                                        3811 Turtle Creek Blvd., Suite 1450
                                        Dallas, Texas  75219
                                        214-744-3000 / 214-744-3015 (Facsimile)
                                        jkendall@kendalllawgroup.com

**TURKE & STRAUSS LLP**
Samuel J. Strauss
Raina Borrelli
613 Williamson Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
sam@turkestrauss.com
raina@turkestrauss.com

*Attorneys for Plaintiff and Proposed Class*