UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

JOE LARA, on behalf of himself and all
others similarly situated,

     Plaintiff,

v.                                                                  No. 5:23-CV-036-H

LUBBOCK HEART HOSPITAL, LLC
d/b/a LUBBOCK HEART & SURGICAL
HOSPITAL,

     Defendant.

## ORDER REQUIRING ADDITIONAL BRIEFING

Before the Court is the plaintiff's Unopposed Motion to Preliminarily Approve Class Settlement. Dkt. No. 19. To certify the class and approve any settlement, the Court must ensure that the the plaintiff and class members have standing. The plaintiff's memorandum notes that the defendant "assert[s] that [the plaintiff] did not have standing to bring his claims." Dkt. No. 20 at 7. The Court concludes that additional briefing is necessary in light of this standing concern. Accordingly, the Court directs the parties to confer and file a joint report in response to this Order no later than December 8, 2023.

The report should address whether any party disputes that the plaintiff has standing as to at least one claim. It should also state whether they wish to continue with the proposed settlement even if the plaintiff lacks standing for some claims, and if not, it should indicate whether the parties plan to continue settlement efforts or whether the Court should set a deadline for the defendant to file its answer and other case-management deadlines. It is the responsibility of the plaintiff to file the report.

1.    **Factual and Procedural Background**

As alleged in the plaintiff's complaint, on July 11, 2022, the defendant, Lubbock

Heart Hospital, was hacked.  Dkt. No. 1 ¶ 16.  This hack exposed personal identifying and

health information of thousands of Lubbock Heart Hospital's patients.  *Id.* ¶¶ 16–18.

Among other things, this information included patients' names, dates of birth, Social

Security numbers, diagnosis information, treatment information, and health insurance

information.  *Id.* ¶ 18.  Several months after the breach, Lubbock Heart Hospital sent notices

to affected patients.  *Id.* ¶¶ 21–27.

The plaintiff and putative class representative, Joe Lara, is a former patient of

Lubbock Heart Hospital who received such a notice.  *Id.* ¶¶ 29, 34.  He claims that this data

breach has injured him due to an increased risk of identity theft, time spent monitoring his

credit, anxiety, a breach of an implied contract with the defendant, and an invasion of his

privacy rights.  *Id.* ¶¶ 35–42.  He brought this putative class action on behalf of himself and

"all persons who were sent written notification by [the d]efendant that their [p]rivate

[i]nformation was potentially comprised as a result of the [data breach]."  *Id.* ¶ 6; Dkt. No.

20 at 11.

Lara and the defendant have reached a settlement agreement and request that the

Court provisionally certify the class for settlement purposes and preliminarily approve the

settlement.  Dkt. No. 19 at 1.

2.    **Legal Standard for Standing**

The power of the federal judiciary extends only to "cases" and "controversies."

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016); U.S. Const. art. III, § 2.  "One element of

the case-or-controversy requirement is that [a plaintiff], based on [his] complaint, must

– 2 –

establish that [he has] standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). A court must ensure that the class representative has standing "prior to deciding class certification" because "if the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) (citation omitted). Further, "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (quoting *Lujan*, 504 U.S. at 560–61). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citation omitted). "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion*, 141 S. Ct. at 2208. Further, "when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (quoting *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007)); *FEC v. Cruz*, 142 S. Ct. 1638, 1647 (2022) ("For standing purposes, we accept as valid the merits of [plaintiffs'] legal claims.").

**3.    Analysis**

In order to provisionally certify the class and preliminarily approve the settlement, the Court must ensure that the plaintiff has standing. In addition, the Court must consider

whether all class members are likely to have standing.  Based on the allegations of the complaint, the central injury cited by the plaintiff is that he and the putative class have suffered an increased risk of identity theft from the exposure of their information.  The Court questions whether such an injury can provide standing for a damages claim.  A "risk of future harm on its own does not support Article III standing for [a] plaintiff['s] damages claim." *TransUnion*, 141 S. Ct. at 2213.  Even prior to *TransUnion*, federal courts were divided on whether a substantial risk of identity theft and fraud based on a data breach could provide standing absent allegations that the plaintiff's identifying information had actually been misused.  *See Tsao v. Captiva MVP Rest. Partners, LLP*, 986 F.3d 1332, 1340–44 (11th Cir. 2021) (collecting cases); *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 854–57 (S.D. Tex. 2015).

Nevertheless, based on the record before the Court, it appears that the plaintiff and putative class members may have standing for the breach-of-implied-contract claim.  *See* Dkt. No. 1 ¶¶ 113–26.  The Fifth Circuit recognizes that injuries to contractual rights are sufficient for standing.  *Servicios Azucareros de Venez., C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 800 (5th Cir. 2012); *Kostka v. Dickey's Barbecue Rest., Inc.*, No. 3:20-cv-3424-K, 2022 WL 16821685, at *4–5 (N.D. Tex. Oct. 14, 2022), *report and recommendation adopted by* 2022 WL 16821665 (Nov. 8, 2022).  As alleged in the complaint, the plaintiff and other patients gave their identifying information and payment to the defendant.  Dkt. No. 1 ¶¶ 114–15.  In exchange, the defendant agreed to provide them with medical services and "to protect and not disclose the [identifying information] to unauthorized persons." *Id.* ¶¶ 115–16.  This indicates that the plaintiff has likely "alleged a concrete harm attributable to all potential class members"—that the patients "did not get the benefit of their bargain

with respect to their implied data-security contracts with" Lubbock Heart Hospital. *Kostka*, 2022 WL 16821685, at *5.

If the plaintiff and other putative class members have standing as to the breach of implied contract, the Court would have jurisdiction under Article III to proceed and to consider the motion to provisionally certify the class and preliminarily approve the settlement as to that claim. However, "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion*, 141 S. Ct. at 2208. Thus, in order for the Court itself to resolve all claims, there must be standing for each claim. In contrast, by the contractual agreement in the proposed settlement, the parties may be able to effectively resolve all claims through the agreement's release of liability.

Since the parties proposed the settlement prior to the Court addressing any standing concerns, the Court finds it necessary to ensure that the parties are still willing to proceed with the proposed settlement even if the Court lacks jurisdiction over all claims brought by the plaintiff. In addition, because the parties themselves have not addressed the standing issue besides noting the defendant's general objection, the Court finds that the parties should be provided an opportunity to address this concern. Accordingly, the Court directs that the parties file a joint report in response to this Order no later than December 8, 2023.

The joint report should address, at minimum, whether the parties agree that the plaintiff has standing as to at least one claim and whether they wish to proceed with the proposed settlement and complete release of liability even if the Court lacks jurisdiction as to all claims. If the parties no longer want the Court to consider the proposed settlement, they must also provide a status report as to whether they plan to engage in further settlement

– 5 –

negotiations or if instead the Court should reinstate the defendant's deadline to file an answer and set other case-management deadlines.

So ordered on November 13, 2023.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE