UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

JOE LARA, on behalf of himself and all
others similarly situated,

     Plaintiff,

v.

No. 5:23-CV-036-H

LUBBOCK HEART HOSPITAL, LLC
d/b/a LUBBOCK HEART & SURGICAL
HOSPITAL,

     Defendant.

**ORDER PRELIMINARILY APPROVING CLASS ACTION
SETTLEMENT AND PROVIDING FOR NOTICE**

Before the Court is the plaintiff's Unopposed Motion to Preliminarily Approve Class

Settlement.  Dkt. No. 19.  The plaintiff, Joe Lara, and the defendant, Lubbock Heart

Hospital, LLC, have entered into a Settlement Agreement and seek Court approval.  Dkt.

Nos. 20; 20-1.  The motion requests that the Court: (1) preliminarily approve the settlement;

(2) provisionally certify the class; (3) approve the notice program set forth in the settlement

agreement; (4) designate Lara as the class representative; (5) appoint Raina C. Borrelli as

class counsel and Joe Kendall as local counsel; (6) approve Epiq as the settlement

administrator; (7) approve the procedures for members to opt-out or object to the settlement;

(8) approve the claim form; (9) stay any deadlines in this litigation; (10) stay and/or enjoin

any actions brought by a class member concerning a claim covered by the Settlement

Agreement; and (11) schedule a final approval hearing.  Dkt. No. 19 at 2–3.

Having considered the record, the Court denies the request to stay and/or enjoin

other litigation related to claims covered by the Settlement Agreement but grants the

remaining portions of the motion as further set forth below.

1.    **Factual and Procedural Background**

As alleged in the plaintiff's complaint, on July 11, 2022, the defendant, Lubbock Heart Hospital, was hacked.  Dkt. No. 1 ¶ 16.  This hack exposed personal identifying and health information of thousands of Lubbock Heart Hospital's patients.  *Id.* ¶¶ 16–18.  Among other things, this information included patients' names, dates of birth, Social Security numbers, diagnosis information, treatment information, and health insurance information.  *Id.* ¶ 18.  Several months after the breach, Lubbock Heart Hospital sent notices to affected patients.  *Id.* ¶¶ 19–27.

The plaintiff and putative class representative, Joe Lara, is a former patient of Lubbock Heart Hospital who received such a notice.  *Id.* ¶¶ 29, 34.  He claims that this data breach has injured him due to an increased risk of identity theft, time spent monitoring his credit, anxiety, a breach of an implied contract with the defendant, and an invasion of his privacy rights.  *Id.* ¶¶ 35–42.  He brought this putative class action on behalf of himself and "all persons who were sent written notification by [the d]efendant that their [p]rivate [i]nformation was potentially comprised as a result of the [data breach]."  *Id.* ¶ 6; Dkt. No. 20 at 11.

Lara and the defendant have reached a settlement agreement and request that the Court provisionally certify the class for settlement purposes and preliminarily approve the settlement, among other things.  Dkt. No. 19 at 1.  Due to concerns over the proposed class's standing to sue regarding some, but not all, of the claims in this litigation, the Court directed the parties to file supplemental briefing.  Dkt. No. 22.  The parties filed the requested joint report, agreeing with the Court that the class has standing as to the implied-breach-of-contract claim and affirming that they wish to proceed with the proposed

settlement. Dkt. No. 23. The Court also directed the parties to address concerns over whether minimal diversity is present as required by 28 U.S.C. § 1332(d), and it has now confirmed that at least one member of the putative plaintiff class is diverse from the defendant.[1] *See* Dkt. Nos. 24; 31; 33; 35. Accordingly, the motion for preliminary approval is now ripe for review.

## 2.    Legal Standards

Pursuant to Federal Rule of Civil Procedure 23, "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. Fed. R. Civ. P. 23(e). When faced with a class proposed to be certified only for settlement, the Court must first ensure that certification would be proper under Rule 23(a) and (b) and then determine whether Rule 23(e)'s settlement requirements are satisfied. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–22 (1997); *Kostka v. Dickey's Barbecue Rest., Inc.*, No. 3:20-cv-3424-K, 2022 WL 16821685, at *2 (N.D. Tex. Oct. 14, 2022), *report and recommendation adopted by* 2022 WL 16821665 (Nov. 8, 2022). At the preliminary approval stage, the parties must show that the Court will be likely to find that the settlement is fair, reasonable, and adequate, and to certify the class for judgment on the proposal. Fed. R. Civ. P. 23(e)(2).

---

[1] The Court previously erred in stating that the LLC defendant's citizenship is based on that of its members, which is the typical citizenship test that does not apply in CAFA cases. *See* Dkt. Nos. 24; 33; 28 U.S.C. § 1332(d)(10); *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425, 426 n.2 (5th Cir. 2014). Instead, the defendant's citizenship is its principal place of business, Texas, and its state of organization, Delaware. Dkt. No. 35 at 2; 28 U.S.C. § 1332(d)(10). The plaintiff class includes persons domiciled in, and therefore citizens of, all 50 states. Dkt. No. 35 at 2; *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797–98 (5th Cir. 2007). Accordingly, Section 1332(d)'s diversity requirement is satisfied. 28 U.S.C. § 1332(d)(2)(A).

A.    **Class Certification**

Class certification involves two components.  First, Rule 23(a)'s prerequisite requirements—numerosity, commonality, typicality, and adequacy of representation—must be satisfied.  Fed. R. Civ. P. 23(a); *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016). Numerosity is satisfied where "joinder of all members is impracticable," looking to the number of members, their geographic dispersion, their ease of identification, the nature of the action, and the size of their claims.  Fed. R. Civ. P. 23(a)(1); *Ibe*, 836 F.3d at 528 (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)). Commonality requires at least "a single common question of law or fact" to the class whose resolution "will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke."  *Ibe*, 836 F.3d at 528 (alteration in original) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  A class representative demonstrates typicality when the legal and remedial theories behind his claim are similar with those of the class.  *Id.* at 528–29.  And adequacy of representation "requires the class representative[] to possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation."  *Id.* at 529 (*quoting Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 482–83 (5th Cir. 2001)).  In addition, Rule 23 contains "an implied prerequisite" that the class must be ascertainable, meaning that the class must be defined in a manner such that the Court can determine who is a member.  *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 & n.3 (5th Cir. 2007).

If the prerequisites are satisfied, a court must determine whether the class action satisfies one of the types of class actions set forth in Rule 23(b).  Fed. R. Civ. P. 23(b).  Here, the plaintiff seeks certification of a Rule 23(b)(3) class, which requires the Court to find that

"the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*  Rule 23(b) sets forth four relevant factors for this superiority inquiry; however, because certification here is solely for settlement purposes, the Court need not consider the fourth factor.  *Id.*; *Amchem Prods., Inc.*, 521 U.S. at 620.  Accordingly, to determine whether a class action is a superior method to resolve this controversy, the Court must inquire into a class member's interest in individually controlling a separate action, the extent and nature of other litigation on this controversy, and the desirability of concentrating the litigation in this forum.  Fed. R. Civ. P. 23(b)(3)(A)–(C).

### B.    Settlement Requirements

If preliminary certification is proper, the Court must next determine whether the settlement should be preliminarily approved under Rule 23(e).  For this inquiry, the Court first evaluates the fairness of the proposed terms of the settlement.  *McNamara v. Bre-X Mins. Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002).  If "the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Id.*

In the Fifth Circuit, courts traditionally apply a six-fact test, known as the *Reed* test, to determine whether a settlement is fair:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 293 (5th Cir. 2017) (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).  Further, Rule 23(e)(2) provides specific factors, which largely overlap with the *Reed* test, to determine whether a settlement should be approved.[2]  *See* Fed. R. Civ. P. 23(e)(2).

3.    **Analysis**[3]

The Court grants in part and denies in part the motion for preliminary approval of the settlement.  The Court finds that the settlement class satisfies the certification requirements and that the settlement satisfies Rule 23(e) and is likely to be found fair at the final approval stage.  The Court also determines that Lara should be designated as the class representative; that Raina C. Borrelli and Joe Kendall should be appointed as class and local counsel, respectively; that Epiq should be appointed as the settlement administrator; that the procedures for members to opt-out or object to the settlement are proper; that the claim form should be approved; that any deadlines in this litigation shall remain stayed; and that a final approval hearing shall be scheduled.  Nevertheless, the Court denies the request to stay and/or enjoin all other actions brought by class members concerning the claims covered by the Settlement Agreement at this time.

A.    **The settlement class meets the requirements of Rule 23(a) and (b) for certification.**

The parties' Settlement Agreement defines the relevant Settlement Class as "all persons who were sent written notification by Defendant that their Private Information was

---

[2] These factors were added to Rule 23 in the 2018 amendments but do not "displace any factor" from the Fifth Circuit's test.  Fed. R. Civ. P. 23(e)(2) advisory committee's note to the 2018 amendment.

[3] For purposes of this Order, various capitalized terms have the definitions set forth in the proposed Settlement Agreement (Dkt. No. 20-1).

potentially compromised as the result of the Data Incident Defendant determined took place in July 2022." Dkt. No. 20-1 ¶ 1.23. The Class excludes:

> (i) Defendant, the Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge.

*Id.* The Court, preliminarily and for purposes of settlement only, finds that the Settlement Class satisfies Rule 23(a) and (b)(3).

First, the definition provided by the parties is sufficiently definite to satisfy ascertainability. The Court can determine whether someone belongs in the class based on whether he received the written notification from the defendant regarding the breach. This definition is "administratively feasible for the [C]ourt" to apply and therefore meets "the touchstone of ascertainability." *Kostka*, 2022 WL 16821685, at *8 (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)).

Numerosity is also satisfied here. A class of "100 to 150 members . . . is within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). The parties state that the class likely includes over 120,000 members. Dkt. No. 20 at 21. Joinder of 120,000 individuals in this action is clearly impracticable and greatly exceeds the 100-members threshold.

Next, the class shares common questions of law or fact appropriate for class-wide resolution. The implied-breach-of-contract claim first requires determining whether there was an implied contract between Lubbock Heart Hospital and the class members, which turns on whether there was an agreement that the defendant would protect their data as part

of its provision of health care services. Moreover, "the scope of this agreement—what data-security measures [the defendant] promised to implement in this implied contract—will also be common to every individual class member's claim." *Kostka*, 2022 WL 16821685, at *7. Finally, whether the defendant breached this claimed promise is also shared by the class members. Each question will result in a common answer that will "drive the resolution" of the implied-breach-of-contract claim. *See Flecha v. Medicredit, Inc.*, 946 F.3d 762, 767 (5th Cir. 2020) (quoting *Dukes*, 564 U.S. at 767). Other courts in this district have similarly found commonality to be satisfied in data breach cases. *See Kostka*, 2022 WL 16821685, at *7 (collecting cases). Accordingly, commonality is satisfied.

Lara's claims are also typical of the Settlement Class. Lara and the other members of the Settlement Class were impacted by the same data breach, which forms the factual basis for all of their claims. In addition, Lara's asserted implied contract and the breach of that contract are identical to the other class members. As a result, Lara's claims turn on the same legal theories and facts as the class, and he therefore satisfies typicality. *See Ibe*, 836 F.3d at 528–29.

In addition, Lara and the proposed class counsel adequately represent the class. Adequacy looks to "whether the putative class representatives are willing and able to take an active role in and control the litigation and to protect the interests of the absentees." *Berger*, 257 F.3d at 479 (internal quotation marks omitted). Courts must consider whether there are conflicts of interest between the representatives and the class. *Id.* at 480. Here, Lara and the proposed class counsel have taken an active role in the litigation as demonstrated by their efforts to obtain the proposed Settlement Agreement. Through their negotiations, they have sought to provide the class with relief for their asserted injuries.

There is no evidence of any conflicts between them and the class. "[T]he parties agreed that they would not negotiate the proposed class's attorney fees or [the] plaintiff's service award until they agreed on the settlement agreement's core terms." Dkt. No. 20-2 at 3. The Settlement Agreement only entitles Lara to the benefits of the class, and he has thus far only requested a modest service award, which has no impact on the benefits for the class. *See* Dkt. No. 20-1 at 25–26. The proposed class counsel also is experienced. Ms. Borrelli has over a decade of experience in representing individuals in complex class actions, including data-breach cases. *Id.* at 4; *see also id.* at 5–7; Dkt. No. 20-3 at 3–12, 17–19. Mr. Kendall has been licensed in Texas for 42 years, is a former United States District Judge in this district, and has served as counsel in numerous class actions. Dkt. Nos. 20-2 at 7; 20-4 at 2–13.

Finally, the class satisfies the predominance and superiority requirements of Rule 23(b)(3). Predominance looks at "whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is "readily met in certain cases alleging consumer or securities fraud." *Amchem Prods., Inc.*, 521 U.S. at 623, 625. As the Court has discussed, this case turns on questions that apply identically to all class members: (1) what agreement, if any, was there between Lubbock Heart Hospital and the class members regarding protection of their identifying information; and (2) whether Lubbock Heart Hospital breached any such agreement and failed to adequately protect their information. All class members are affected by the same data breach. These common issues predominate over any issue as to the different amount of damages each has suffered.

As for superiority, it is desirable to resolve these claims in a single case. Given the large overlap in issues, it would be wasteful for each class member to individually litigate these issues. In addition, their recovery from an individual lawsuit could easily be

outweighed by litigation costs. This "problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights" is "[t]he policy at the very core of the class action mechanism." *Id.* at 617 (quotation omitted). This Court is also a desirable forum to litigate these claims given that Lubbock Heart Hospital is located within the division where this case is pending.

In sum, the Court, preliminarily, and for purposes of settlement only, concludes that the Settlement Class satisfies the requirements of Rule 23(a) and (b)(3).

**B.    The proposed Settlement Agreement satisfies Rule 23(e) and will likely be found fair at the final approval stage.**

The Court also concludes that the Settlement Agreement should be preliminarily approved because it satisfies Rule 23(e) and the *Reed* factors and will likely be found fair at the final approval stage. Pursuant to Rule 23(e)(2), the Court must consider whether (1) "the class representative[] and class counsel have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate"; and (4) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). All of these factors support preliminary approval here.

**i.    Lara and class counsel have adequately represented the class.**

First, as previously discussed in the Rule 23(a) analysis, Lara and his counsel adequately represented the class. Counsel is highly experienced in handling class actions and reached this settlement following their review of discovery materials. Dkt. Nos. 20-2 at 3–7; 20-3 at 3–12, 17–19; 20-4 at 2–13. Lara's interests are aligned with those of the proposed class as he will receive the same benefits from the settlement as them. And both counsel and Lara have demonstrated their commitment to this case through their negotiations of the settlement.

### ii.    The Settlement Agreement was negotiated at arm's length.

Second, the Settlement Agreement was negotiated at arm's length. The Court "may presume that a proposed settlement is fair and reasonable, and lacking fraud or collusion, when it is the result of arm's-length negotiations." *Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018) (citing *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007)). Moreover, unless there is evidence to the contrary, the Court presumes that "no fraud or collusion occurred." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010). The parties first met with an experienced mediator in June 2023 to try to resolve this case. Dkt. No. 20-2 at 3. During those discussions, they "communicat[ed] their positions through [the mediator] and evaluat[ed] the strengths and weaknesses underling their claims and defenses." *Id.* They did not settle at the mediation but created a framework that led to this Settlement Agreement. *Id.* Their use of a mediator and the absence of any evidence of fraud or collusion indicates that the Settlement Agreement was negotiated at arm's length.

### iii.    The Settlement Agreement's proposed relief is adequate.

Third, the proposed relief for the class is adequate. In considering the adequacy of the relief, courts look to (1) the risks and costs of trial and appeal; (2) the effectiveness of the proposed method to process class-member claims and distribute relief; (3) the terms of attorney's fees; and (4) any agreement made in connection with the proposal. Fed. R. Civ. P. 23(e)(2)(C), (3). The risks and costs of trial and appeal include "the complexity, expense, and likely duration of the litigation; the stage of the proceeding and the amount of discovery completed; the probability of plaintiff's success on the merits; and the range of possible

recovery." *Jones*, 865 F.3d at 293 (cleaned up) (quoting *Reed*, 703 F.2d at 172); *Kostka*, 2022 WL 16821685, at *11.

This litigation presents significant risks and is only at the pleading stage. There is little caselaw from the Fifth Circuit involving data-breach cases, and most of those cases address indemnity issues not the merits of such claims. *Id.*; *see, e.g.*, *Paymentech, L.L.C. v. Landry's Inc.*, 60 F.4th 918, 921 (5th Cir. 2023); *Landry's Inc. v. Ins. Co. of the State of Pa.*, 4 F.4th 366, 367 (5th Cir. 2021). These cases often include difficult questions regarding standing, *see Tsao v. Captiva MVP Rest. Partners, LLP*, 986 F.3d 1332, 1340–44 (11th Cir. 2021) (collecting cases); *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 853–57 (S.D. Tex. 2015), and while the complaint's allegations are sufficient for at least one claim, the class members could struggle to demonstrate standing at a later stage or to prove that they had an implied contract. *See* Dkt. Nos. 1 ¶¶ 113–26; 22 at 4. "The fact that the case is now only at the pleading stage indicates that the greatest costs of potential litigation are still ahead, to say nothing of potential appeals." *Kostka*, 2022 WL 16821685, at *11. Ensuring that the class members obtain relief in light of these significant risks and future costs favors approval.

As for the range of possible recovery, while it is not fully evident what the class members would obtain if they succeeded at trial, this Settlement Agreement provides recovery that is similar to or better than settlements in other data breach cases. *See* Dkt. No. 20-1 at 11–13; *e.g.*, Exhibit 1 to Motion for Preliminary Approval of Class Action Settlement at 8, 11–13, *Kostka*, 2022 WL 16821685 (N.D. Tex. Aug. 14, 2021) (No. 3:20-CV-3424-K), ECF No. 62-1; Order Preliminarily Approving Settlement, *Brady v. Due North Holdings, LLC*, No. 1:17-CV-1313 (S.D. Ind. May 14, 2018), ECF No. 52; Plaintiffs' Unopposed Motion for

Preliminary Approval of Class Action Settlement at 4–7, *Brady*, No. 1:17-CV-1313 (S.D.

Ind. May 6, 2018), ECF No. 50.  The Settlement Agreement provides reimbursement up to

$3,500 per class member for documented out-of-pocket expenses and some reimbursement

for lost time, along with credit monitoring.  Dkt. No. 20-1 at 11–13.  Unlike many

settlements for data breach cases that limit the overall pool of money available to class

members, this one does not cap the total amount that the defendant must pay for valid

claims.  *See* Dkt. Nos. 20 at 19 (collecting cases); *e.g.*, Plaintiffs' Unopposed Motion for

Preliminary Approval of Class Action Settlement at 6, *Brady*, No. 1:17-CV-1313 (S.D. Ind.

May 6, 2018), ECF No. 50 (providing that "the sum of the total reimbursement paid under

[certain claims] to all Settlement Class Members shall not exceed $50,000").  Accordingly,

this further indicates the fairness and adequacy of the Settlement Agreement.

    As for the effectiveness of the method of processing claims and distributing relief, this

also supports approval.  Class members simply need to fill out the claim form and provide

documentation as necessary.  *See* Dkt. No. 20-1 at 13–14.  If a form is inadequate, the

experienced Claims Administrator must request additional information and provide the

claimant with an opportunity to cure.  *Id.* at 14.  This process—submitting a claim form to

be considered by an experienced claims administrator—favors approval.  *Kostka*, 2022 WL

16821685, at *12.

    The attorney's-fees agreement was negotiated separate from the Settlement

Agreement and does not impact the overall funds available to class members.  *See* Dkt. Nos.

20 at 15; 20-1 at 25.  The Settlement Agreement itself notes that the defendant "has agreed

to not object" to attorney's fees "in an amount not to exceed $262,500," and the proposed

notice also notes this possible fee award and therefore will allow members of the Settlement

Class an opportunity to object if they believe that the amount of potential fees at issue is unfair. Dkt. No. 20-1 at 25, 43. And the Settlement Agreement is not contingent on any amount of attorney's fees or a service award to Lara. Dkt. No. 20-1 at 26. This factor also supports finding that the Settlement Agreement is fair, reasonable, and adequate. *Spegele v. USAA Life Ins. Co.*, No. 5:17-cv-967-OLG, 2021 WL 4935978, at *6 (W.D. Tex. Aug. 26, 2021).

The final consideration regarding the adequacy of the settlement is any agreement covered by Rule 23(e)(3). The parties have not identified any such agreements, so this factor in inapplicable. *See generally* Dkt. No. 20.

Accordingly, these various considerations demonstrate that the Settlement Agreement provides adequate relief to the class members and therefore favor approval.

### iv.    The Settlement Agreement treats class members equitably.

The final consideration stated in Rule 23(e) regarding a settlement's fairness, reasonableness, and adequacy is whether it "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This factor also supports preliminary approval. Equitable treatment does not require equal treatment of class members. *Kostka*, 2022 WL 16821685, at *13. Instead, it is proper for a class member's recovery to depend on the strength of his claim. *Id.* Under the Settlement Agreement, each class member may recover up to $3,500 for their out-of-pocket expenses and for attested and documented lost time. Dkt. No. 20-1 at 11–12. While the amount of recovery by each class member will differ based on those expenses, these distinctions based on documented losses properly accounts for the strength of their claims and show equitable treatment of the members. *Kostka*, 2022 WL 16821685, at *13.

In sum, applying the required factors, the Court determines that they all weigh in favor of preliminarily approving the Settlement Agreement and that the settlement will likely be found fair at the final approval stage.

### C.    The plaintiff's remaining requests, except staying or enjoining other litigation at this stage, are proper.

Finally, the Court considers the remaining requests of the plaintiff.  The plaintiff also asks the Court to (1) approve the notice program set forth in the settlement agreement; (2) designate Lara as the class representative; (3) appoint Raina C. Borrelli as class counsel and Joe Kendall as local counsel; (4) approve Epiq as the settlement administrator; (5) approve the procedures for members to opt-out or object to the settlement; (6) approve the claim form; (7) stay any deadlines in this litigation; (8) stay and/or enjoin any actions brought by a class member concerning a claim covered by the Settlement Agreement; and (9) schedule a final approval hearing.  Dkt. No. 19 at 2–3.  The Court finds that these requests are proper and grants them, except for staying or enjoining other litigation.

As previously discussed, Lara and his attorneys adequately represent the class and have demonstrated their commitment to this case.  *See supra* Sections 3.A–3.B.i. Accordingly, Lara is appointed as the representative plaintiff for the Settlement Class, Raina C. Borreli is appointed as class counsel, and Joe Kendall is appointed as local counsel for the class.  *See* Dkt. No. 19 at 1–3.

The proposed settlement administrator, Epiq Class Action and Claims Solutions, is also approved.  Epiq is an experienced settlement administrator and has previously been approved as a claims administrator in other complex class actions in this District.  Dkt. No. 32-2 at 1; *see Kostka*, 2022 WL 16821685, at *14 (appointing Epiq).

– 15 –

The Court also approves the notice plan. Under Rule 23(c)(2)(B), "the [C]ourt must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Fed. R. Civ. 23(c)(2)(B). Such notice may be by mail, electronic communications, or other appropriate means, and it must state a variety of different things. *Id.* The Settlement Agreement states that the defendant will provide the most recent address and email for each class member to the claims administrator, which will then mail the proposed short notice to each class members. Dkt. No. 20-1 at 16. The proposed short notice contains basic information regarding the settlement to the class members and directs them to settlement website which will contain the long notice and the claim form. *Id.* at 17–20; 35–45. Together, the long and short notices supply all of the information required by Rule 23(c)(2)(B) and are written in plain language. *See id.* at 35–45. This notice plan provides the individual notice required by Rule 23 and is reasonably calculated to inform them of all their necessary rights.

Likewise, the Court approves the parties' claim form. *See* Dkt. No. 20-1 at 47–50. The form clearly states the information that a claimant must provide in order to obtain relief under the Settlement Agreement and is written in a manner that is easily understandable. Further, many portions of the form are simple for members to fill out because it includes check-box-style responses. In addition, the claim form may be either mailed or filed online.

The Court approves the opt-out procedures and the objection process. For 23(b)(3) classes, members must be given an opportunity to request exclusion. Fed. R. Civ. P. 23(c)(2)(B)(v). The proposed procedures here give members of the Settlement Class sixty days from the commencement of the notice program to opt-out by submitting a written

notice to the claims administrator.  Dkt. No. 20-1 at 21–22.  Anyone within the definition of the Settlement Class who opt outs is not bound by the Settlement Agreement and retains their ability to bring their own claim in accordance with Rule 23.  *Id.*  As for the objection process, Rule 23(e)(5) permits any class member to object to the proposed settlement.  Fed. R. Civ. P. 23(e)(5).  The proposed objection process provides sixty days for a party to file a written notice with the Court and to notify class counsel and the defendant of his objection.  Dkt. No. 20-1 at 22–23.  This process and the information required for a valid objection are reasonable and aimed at ensuring the Court's and the parties' ability to adequately address the objection.  *See id.*

Also, to properly effectuate the Settlement Agreement, the Court grants the plaintiff's request to stay all proceedings in this case other than those related to approving the settlement.  However, as to other pending litigation in front of other courts, the Court declines to stay or enjoin them at this time.  Generally, a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  Rule 23 is not an express exception to Section 2283, but in some contexts, courts have found that staying other proceedings is necessary in order to preserve their jurisdiction over a preliminarily approved class action settlement.  *See Piambino v. Bailey*, 610 F.2d 1306, 1331 (5th Cir. 1980); *Stott v. Cap. Fin. Servs., Inc.*, 277 F.R.D. 316, 337–38 (N.D. Tex. 2011).  For example, a court may stay pending proceedings in order to retain its jurisdiction in cases involving a limited-fund class action, but this is not a limited-fund case and lacks the justifications for exercising such stays.  *Id.* at 336–38.  In the context of limited funds, class members cannot opt out and courts often "enjoin[] other

legal proceedings to preserve the limited assets that would be available to all class members." *Id.* at 336. But here, members can opt out, and the Settlement Agreement's own structure excludes a cap on the amount that the defendant may have to pay. *See* Dkt. No. 20 at 8. Neither party has explained why a stay of proceedings in other cases is necessary for the Court to effectuate the Settlement Agreement here, and in the absence of such justification, the Court finds that it is improper to stay ongoing proceedings at this time.

Finally, the Court sets the fairness and final approval hearing for Tuesday, July 30, 2024, at 9:00 a.m. in the United States District Court, 1205 Texas Avenue, Lubbock, Texas 79401.

## 4.    Conclusion

In light of the foregoing, the Court grants in part and denies in part the motion for preliminary approval of the settlement. Dkt. No. 19. Accordingly, the Court orders as follows:

### A.    Class Certification for Settlement Purposes Only

The Settlement Agreement provides for a Settlement Class defined as follows:

> All persons who were sent written notification by Defendant that their Private Information was potentially compromised as a result of the Data Incident Defendant determined took place in July 2022.

Specifically excluded from the Settlement Class are:

> (i) Defendant, the Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge.

Pursuant to Federal Rules of Civil Procedure 23(e)(1), the Court finds that giving notice is justified. The Court finds that it will likely be able to approve the proposed Settlement as

– 18 –

fair, reasonable, and adequate. The Court also finds that it will likely be able to certify the Settlement Class for purposes of judgment on the Settlement because it meets all of the requirements of Rule 23(a) and the requirements of Rule 23(b)(3). Specifically, the Court finds for settlement purposes only that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members would be impracticable; (b) there are issues of law and fact that are common to the Settlement Class; (c) the claims of the Class Representative are typical of and arise from the same operative facts and the Class Representative seeks similar relief as the claims of the Settlement Class Members; (d) the Class Representative will fairly and adequately protect the interests of the Settlement Class as the class representative has no interests antagonistic to or in conflict with the Settlement Class and has retained experienced and competent counsel to prosecute this litigation on behalf of the Settlement Class; (e) questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this litigation.

### B.    Settlement Class Representatives and Settlement Class Counsel

The Court finds that the plaintiff will likely satisfy the requirements of Rule 23(e)(2)(A) and should be appointed as the Class Representative. Additionally, the Court finds that Raina Borrelli of the law firm Turke & Strauss LLP and Joe Kendall of Kendall Law Group will likely satisfy the requirements of Rule 23(e)(2)(A) and should be appointed as class counsel pursuant to Rule 23(g)(1).

### C.    Preliminary Settlement Approval

Upon preliminary review, the Court finds the Settlement is fair, reasonable, and adequate to warrant providing notice of the Settlement to the Settlement Class and accordingly is preliminarily approved. In making this determination, the Court has

considered the monetary and non-monetary benefits provided to the Settlement Class through the Settlement, the specific risks faced by the Settlement Class in prevailing on their claims, the good faith, arms' length negotiations between the Parties and absence of any collusion in the Settlement, the effectiveness of the proposed method for distributing relief to the Settlement Class, the proposed manner of allocating benefits to Settlement Class Members, the Settlement treats the Settlement Class Members equitably, and all of the other factors required by Rule 23 and relevant case law.

###### D.    Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and personal jurisdiction over the parties before it and over the Settlement Class Members. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

###### E.    Final Approval Hearing

A Final Approval Hearing shall be held on Tuesday, July 30, 2024, at 9:00 a.m. in the United States District Court, 1205 Texas Avenue, Lubbock, Texas 79401, where the Court will determine, among other things, whether: (a) this litigation should be finally certified as a class action for settlement purposes pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3); (b) the Settlement Agreement should be approved as fair, reasonable, and adequate, and finally approved pursuant to Federal Rule of Civil Procedure 23(e); (c) this litigation should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (d) Settlement Class Members (who have not timely and validly excluded themselves from the Settlement) should be bound by the releases set forth in the Settlement Agreement; (e) the application of Class Counsel for an award of attorneys' fees, costs, and expenses should be approved pursuant to Federal Rule of Civil Procedure 23(h); and (f) the application of the Class Representative for a service award should be approved.

### F.    Claims Administrator

The Court appoints Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator, with responsibility for class notice and settlement administration. The Claims Administrator is directed to perform all tasks the Settlement Agreement requires.  The Claims Administrator's fees will be paid pursuant to the terms of the Settlement Agreement.

### G.    Notice

The proposed notice program set forth in the Settlement Agreement and the Notices and Claim Form attached to the Settlement Agreement as Exhibits A, B, and C (Dkt. No. 20-1 at 34–50) are hereby approved.  Non-material modifications to these Exhibits may be made by the Claims Administrator in consultation and agreement with the Parties, but without further order of the Court.

### H.    Findings Concerning Notice

The Court finds that the proposed form, content, and method of giving notice to the Settlement Class as described in the notice program and the Settlement Agreement and its exhibits: (a) will constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of this litigation, the terms of the proposed Settlement, and their rights under the proposed Settlement, including, but not limited to, their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; (d) meet all applicable requirements of law, including Federal Rule of Civil Procedure 23(c); and (e) meet the requirements of the Due Process Clauses of the United States and Texas

Constitutions. The Court further finds that the notice provided for in the Settlement Agreement is written in plain language, uses simple terminology, and is designed to be readily understandable by Settlement Class Members.

The Claims Administrator is directed to carry out the notice program in conformance with the Settlement Agreement.

## I.   Class Action Fairness Notice

Within ten (10) days after the filing of this Motion with the Court, the Claims Administrator acting on behalf of the defendant shall have served or caused to be served a notice of the proposed Settlement on the appropriate officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). *See* Dkt. No. 32-2.

## J.   Exclusion from Class

Any Settlement Class Member who wishes to be excluded from the Settlement Class must individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator in the manner provided in the notice. The written notice must clearly manifest a person's intent to be excluded from the Settlement Class. To be effective, such requests for exclusion must be postmarked no later than the Opt-Out Date, which is no later than sixty (60) days from the date on which notice program commences pursuant to ¶ 3.2(d) in the Settlement Agreement, and as stated in the Notice.

In the event that within ten (10) days after the Opt-Out Date, there have been requests for exclusions totaling more than twenty-five (25) individuals, the defendant may void this Settlement Agreement by notifying class counsel in writing. If the defendant voids

this Agreement under this provision, (a) the parties shall be restored to their respective positions in the litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court as to avoid prejudice to any party or party's counsel; (b) the terms and provisions of the Settlement Agreement and statements made in connection with seeking approval of the Settlement shall have no further force and effect with respect to the parties and shall not be used in the Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement and shall be treated as vacated, *nunc pro tunc*; and (c) the defendant shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Class Counsel and service award to the plaintiff, and shall not, at any time, seek recovery of the same from any other party to the litigation or from counsel to any other party to the litigation.

Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Class Counsel and to the defendant's counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

If a Final Order and Judgment is entered, all persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class shall be bound by the terms of this Settlement Agreement and the Final Order and Judgment. All persons who submit valid and timely notices of their intent to be excluded from the Settlement Class shall not receive any Settlement benefits of and/or be bound by the terms of the Settlement Agreement.

### K.    Objections and Appearances

A Settlement Class Member (who does not submit a timely written request for exclusion) desiring to object to the Settlement Agreement may submit a timely written notice of his or her objection by the Objection Date and as stated in the notice.  The Long Notice shall instruct Settlement Class Members who wish to object to the Settlement Agreement to file their objections with the Court and to mail copies to Class Counsel and the defendant's counsel.  The notice shall advise Settlement Class Members of the deadline for submission of any objections—the "Objection Date."  Any such notices of an intent to object to the Settlement Agreement must be written and must include all of the following: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of notice, copy of original notice of the Data Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of any and all counsel representing the objector in connection with the objection; (v) a statement as to whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; (vi) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); and (vii) a list, by case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement within the last three (3) years.

To be timely, written notice of an objection in the appropriate form must contain the case name and docket number *Lara v. Lubbock Heart Hospital, LLC*, 5:23-CV-036-H and must

be filed with the Clerk of Court by the Objection Date, which is no later than sixty (60) days from the date on which notice program commences pursuant to ¶ 3.2(d) in the Settlement Agreement, and served concurrently therewith upon Class Counsel and the defendant's counsel, postmarked by the Objection Date, established by this Order and as stated in the notice.

Any Settlement Class Member who fails to comply with the requirements for objecting shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the litigation.  The provisions stated ¶ 5.1 of the Settlement Agreement be the exclusive means for any challenge to the Settlement Agreement.  Any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Final Order and Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

### L.    Claims Process

Class counsel and the defendant have created a process for Settlement Class Members to claim benefits under the Settlement.  The Court preliminarily approves this process and directs the Claims Administrator to make the Claim Form or its substantial equivalent available to Settlement Class Members in the manner specified in the Notice.

The Claims Administrator will be responsible for effectuating the claims process.

Settlement Class Members who qualify for and wish to submit a Claim Form shall do so in accordance with the requirement and procedures specified in the Notice and the Claim Form.  If the Final Order and Judgment is entered, all Settlement Class Members

who qualify for any benefit under the Settlement but fail to submit a claim in accordance with the requirements and procedures specified in the notice and the Claim Form shall be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions in the Final Order and Judgment, including the releases contained therein.

**M.    Termination of Settlement**

This Order shall become null and void and shall be without prejudice to the rights of the parties, all of whom shall be restored to their respective positions existing before the Court entered this Order and before they entered the Settlement Agreement, if: (a) Settlement is not finally approved by the Court or is terminated in accordance with the Settlement Agreement; or (b) there is no Effective Date.  In such event, (i) the parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any party or party's counsel; (ii) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the parties and shall not be used in the litigation or in any other proceeding for any purpose, and (iii) any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc.*

**N.    Use of Order**

This Order shall be of no force or effect if the Final Order and Judgment is not entered or there is no Effective Date and shall not be construed or used as an admission, concession, or declaration by or against Defendant of any fault, wrongdoing, breach, or liability.  Nor shall this Order be construed or used as an admission, concession, or

declaration by or against the class representative or any other Settlement Class Member that his or her claims lack merit or that the relief requested is inappropriate, improper, unavailable, or as a waiver by any party of any defense or claims they may have in this litigation or in any other lawsuit.

### O.    Continuance of Hearing

The Court reserves the right to adjourn or continue the Final Fairness Hearing and related deadlines without further written notice to the Settlement Class.  If the Court alters any of those dates or times, the revised dates and times shall be posted on the Settlement Website maintained by the Claims Administrator.  The Court may approve the Settlement, with such modifications as may be agreed upon by the parties, if appropriate, without further notice to the Settlement Class.

### P.    Stay of Litigation

All proceedings in this litigation, other than those related to approval of the Settlement Agreement, are hereby stayed.

### Q.    Schedule and Deadlines

The Court orders the following schedule of dates for the specified actions/further proceedings:

| Event | Deadline |
|---|---|
| Defendant Will Serve or Cause to Be Served CAFA Notice, Per 28 U.S.C. § 1715(b) | No Later Than 10 Days after Plaintiff's Motion for Preliminary Approval is Filed with Court |
| Defendant Provides Class Member Information to Claims Administrator | Within 14 Days of Entry of Preliminary Approval Order |
| Deadline for Claims Administrator to Begin Sending Short Form Notice (by First Class USPS Mail) | Within Forty-Five (45) Days of Entry of Preliminary Approval Order (the "Notice Commencement Date") |

| | |
|---|---|
| Deadline for Claims Administrator to Finish Sending Short Form Notice | No Later Than Sixty (60) Days of Entry of Preliminary Approval Order |
| Motion for Attorneys' Fees, Costs, Expenses, and Service Award to Be Filed by Settlement Class Counsel | At Least 14 Days Prior to Opt-Out/ Objection Dates |
| Opt-Out/Objection Date Deadlines | 60 Days after Notice Commencement Date |
| Claims Administrator Provides Parties with List of Timely, Valid Opt-Outs | 7 Days after Opt-Out Date |
| Claims Deadline | 90 Days after Notice Commencement Date |
| Motion for Final Approval to Be Filed by Class Counsel | At Least 14 Days Prior to Final Approval Hearing |
| Final Approval Hearing | Tuesday, July 30, 2024, at 9:00 a.m. in the United States District Court, 1205 Texas Avenue, Lubbock, Texas 79401 |

So ordered on February 16, 2024.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE