**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

| | |
|---|---|
| JOE LARA, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No. 5:23-cv-00036-H |
| v. | |
| LUBBOCK HEART HOSPITAL, LLC, dba LUBBOCK HEART & SURGICAL HOSPITAL, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.    BACKGROUND ............................................................................................................ 2

    A.   The Litigation ............................................................................................................ 2

    B.   Mediation ................................................................................................................... 4

    C.   Post-Mediation Negotiations and Settlement ....................................................... 4

    D.   The Settlement .......................................................................................................... 5

    E.   Preliminary Approval, Notice, and Claims Activity ........................................... 7

III.    LEGAL STANDARD .................................................................................................... 9

IV.    ARGUMENT ............................................................................................................... 10

    A.   The Settlement is fair, reasonable, and adequate ............................................... 10

        i.    The Court should presume the settlement is "fair, adequate, and reasonable" ............ 11

        ii.    Plaintiff and his counsel represented the class "adequately" ......................................... 11

        iii.    This case's risks, complexity, and expense justify settlement at this stage ................. 12

        iv.    Class counsel recommends the settlement .................................................... 13

        v.    The method for delivering relief supports approval ................................... 14

        vi.    The settlement treats class members "equitably" ...................................... 14

        vii.    Class members have not objected to the settlement .................................... 15

    B.   The Court should finally certify the settlement class ........................................ 15

    C.   The Notice Plan Complied with Rule 23 and Due Process ............................... 17

V.    CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................ 9, 20

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*,
   211 F.R.D. 457 (S.D. Fla. 2002) ................................................................................ 14

*Attias, et al., v. Carefirst, Inc.*,
   Case No. 15-cv-882 (CRC) (D.D.C. Mar. 28, 2023)................................................... 4

*Ayers v. Thompson*,
   358 F.3d 356 (5th Cir. 2004) ..................................................................................... 14

*Billittri v. Securities America, Inc.*,
   Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011)......... 20

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. at 292 ...................................................................................................... 15

*Desue v. 20/20 Eye Care Network, Inc.*,
   No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS 117355 (S.D. Fla. July 8, 2023) ............... 14

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
   807 F. App'x 752 (10th Cir.), cert. denied sub nom. *Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct.
   851 (2020) ................................................................................................................. 20

*Feder v. Elec. Data Sys. Corp.*,
   429 F.3d 125 (5th Cir. 2005) ..................................................................................... 18

*Green v. eBay Inc.*,
   No. CIV. A. 14-1688, 2015 WL 2066531 (E.D. La. May 4, 2015) ........................... 3

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200 (W.D. Ky. Aug. 23,
   2010)........................................................................................................................... 14

*In re Heartland Payment Sys.*,
   851 F. Supp. 2d at 1064............................................................................. 12, 13, 18

*Jenkins v. Raymark Indus., Inc.*,
   782 F.2d 468 (5th Cir. 1986) ..................................................................................... 19

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ............................................ 2, 11, 12, 14, 15

*Little v. Kia Motors Am., Inc.*,
   242 N.J. 557 (2020) ................................................................................................ 4

*Manchaca v. Chater*,
   927 F. Supp. 962 (E.D. Tex. 1996) ...................................................................... 13

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) ................................................................................ 17

*ODonnell v. Harris Cnty., Texas*,
   No. CV H-16-1414, 22019 U.S. Dist. LEXIS 151159 (S.D. Tex. Sept. 5, 2019) ..................... 10

*Pettway v. Am. Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) ........................................................................ 11, 15

*Purdie v. Ace Cash Express, Inc.*,
   No. 301CV1754L, 2003 U.S. Dist. LEXIS 22547 (N.D. Tex. Dec. 11, 2003) ....................... 10

*Reed v. General Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ........................................................................ 10, 11

*San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*,
   188 F.R.D. 433 (W.D. Tex. 1999) .......................................................................... 15

*Spegele v. USAA Life Ins. Co.*,
   No. 5:17-cv-967-OLG, 2021 U.S. Dist. LEXIS 204744 (W.D. Tex. Aug. 26, 2021) .............. 16

*Stott v. Capital Fin. Servs., Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) .............................................................. 16, 18, 20

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................ 18

*Welsh v. Navy Fed. Credit Union*,
   No. 16-CV-1062, 2018 U.S. Dist. LEXIS 227456, 2018 WL 7283639 (W.D. Tex. Aug. 20,
   2018) ................................................................................................................. 12

**Rules**

Federal Rules of Civil Procedure, Rule 23 ...................................... i, 1, 2, 9, 10, 11, 12, 14, 15, 17

## I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Settlement Agreement and Release (ECF No. 20-1) (the "Settlement" or "SA") and this Court's Preliminary Approval Order (ECF No. 36) (the "Preliminary Approval Order"), Plaintiff Joe Lara ("Plaintiff" or "Mr. Lara") respectfully moves for final approval of the proposed Settlement with Lubbock Heart Hospital, LLC d/b/a Lubbock Heart and Surgical Hospital ("Lubbock" or "Defendant") as "fair, adequate, and reasonable" and affirmation of the Settlement Class certification defined in the Settlement Agreement. The Settlement, reached after investigation, litigation, and hard-fought negotiations, resolves all of Plaintiff's and Settlement Class Members' claims against Defendant in this action. Plaintiff and Class Counsel firmly believe that the settlement is in the Settlement Class's best interests and that the Settlement satisfies the standards for final approval discussed herein.

With this settlement, Plaintiff achieved what he set out to accomplish with this case. Following the July 2022 Data Incident, Plaintiff sought to compensate putative members of the class for potential losses related to the Data Incident. If approved, the Settlement will deliver just that, securing such benefits for the class.

First, it guarantees Settlement Class members to the opportunity to claim losses from the incident, including "Out of Pocket" losses up to $3,500 and lost time. Second, Class Members can submit a claim for credit monitoring for two years with three credit bureaus at no cost and $1 million in fraud insurance, reducing their risk for identity theft and fraud. Third, Lubbock has affirmed it improved its cybersecurity following the incident. Finally, Lubbock will pay the costs to administer the settlement, the class's attorney fees and costs, not to exceed $262,500, and Plaintiff's service award, not to exceed $2,500—all without reducing the benefits to the class.

Through the parties' notice program, 111,526 notices were sent via U.S. mail, notifying 89.2% of Class Members. Declaration of Cameron R. Azari ("Azari Dec.") ¶23. The notice provided Class Members with a chance to claim benefits either online or by mail. As of this date, no Class Members have objected to the Settlement, and only eight Class Members have requested exclusion.

Accordingly, the settlement is "fair, adequate, and reasonable," and the Court should approve it. Indeed, the Court should presume the settlement satisfies Rule 23(e) and the Fifth Circuit's standards for approval because the parties negotiated and administered the settlement at "arm's length." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources"). This is not to mention that the risks in litigating this matter through discovery and trial merit settlement at this stage, as Plaintiff had the facts needed to evaluate the case's strengths and weaknesses and the relief that would best benefit the class. In other words, the results achieved under the circumstances here exceed what Rule 23(e) and the Fifth Circuit expect from Plaintiff and his counsel in approving this settlement.

## II.     BACKGROUND

### A.  The Litigation

Lubbock is a "physician-owned" hospital based in Lubbock, Texas. (ECF No. 1) ("Compl.") ¶¶11-12. Plaintiff alleged that Lubbock collected Private Identifiable Information ("PII") and Protected Health Information ("PHI") from its patients to run its business. *Id.* ¶3. This information may include patients' "names, contact information, demographic information, dates of birth, Social Security numbers, diagnosis information, treatment information, prescription information, Medical Records numbers, provider names, dates of service, and health insurance

information." *Id.* ¶18. Plaintiff alleged that by collecting its patients' PII and PHI, Lubbock promised to protect this data, and informed patients that it was "required by law to: Maintain the privacy of protected health information[.]" *Id.* ¶14. Plaintiff claimed that he and Class Members relied on Lubbock's promise when they agreed to obtain medical services and treatment from Defendant. *Id.* ¶119. Plaintiff further alleged that Lubbock never implemented the safeguards and systems needed to fulfill its promise, and this led to the data breach. *Id.* ¶¶16, 26.

Plaintiff alleged that in July 2022, Lubbock discovered that criminals had bypassed its security systems and may have compromised patient PII and PHI (the "Data Breach"). *Id.* ¶16. Lubbock's notice of the Data Incident stated that "an unauthorized party accessed some of our systems to copy certain files." *Id.* ¶17. Those files may have included the class's PHI and PII. *Id.* ¶18. Plaintiff alleged that Lubbock did not detect the Data Incident before it happened, nor did it stop hackers from accessing patients' information. *Id.* ¶¶16-18. Thus, Plaintiff alleged that the Data Incident may have exposed the PII and PHI belonging to over 120,000 patients, including Plaintiff. Settlement Agreement *Id*.

Mr. Lara is a Lubbock patient. *Id.* ¶29. In February 2023, Plaintiff filed suit against Lubbock, alleging causes of action arising out of the Data Incident, Lubbock denied any and all liability and allegations of wrongdoing. Lubbock asserted that Plaintiff lacked standing under Article III and suggested it would move to dismiss on those grounds. ECF No. 20-2 ("Borrelli Dec."), ¶6. Citing *Green v. eBay Inc.*, Lubbock posited that the Court would dismiss Mr. Lara's complaint because the injuries he alleged were not "concrete, particularized, and actual or imminent[.]" No. CIV. A. 14-1688, 2015 WL 2066531 (E.D. La. May 4, 2015); Borrelli Dec. ¶6. Lubbock further asserted Plaintiff's claims would otherwise fail at summary judgment because he could not prove damages, or that he would fail to certify the class because he could not establish

typicality, commonality, or predominance. *Id.*; *see Attias, et al., v. Carefirst, Inc.*, Case No. 15-cv-882 (CRC) (D.D.C. Mar. 28, 2023); *Little v. Kia Motors Am., Inc.*, 242 N.J. 557, 592 (2020).

Given the risks that litigating Mr. Lara's case posed to both sides, the parties agreed to attempt mediating their case, and selected Bruce A. Friedman, Esq. from JAMS, a mediator experienced in settling data security cases. Borrelli Dec. ¶8.

## B. Mediation

Before mediation, Mr. Lara's counsel requested that Lubbock provide "informal mediation discovery," in order to gather information they believed necessary to understand the Data Incident's scope, causes, and impact. *Id.* ¶8. Lubbock produced confidential confirmatory discovery, including information regarding the security improvements that Lubbock had implemented following the Data Incident. *Id.* Armed with this discovery, Mr. Lara understood the circumstances affecting his claims and Lubbock's defenses, including the risks and expenses involved in litigating the case. *Id.*

In June 2023, the parties attended a mediation with Mr. Friedman after Plaintiff's counsel reviewed Lubbock's confidential, informal discovery. *Id.* In so doing, the parties negotiated at "arm's length," communicating their positions through him and evaluating the strengths and weaknesses underlying each side's claims and defenses. *Id.* From the start, the parties agreed they would not negotiate the proposed class's attorney fees or plaintiff's service award until they agreed on the settlement agreement's core terms, thus avoiding conflict between plaintiff and the class. *Id.*

Although the parties did not settle at mediation, they developed a framework for settlement, as described below. *Id.*

## C. Post-Mediation Negotiations and Settlement

4

While the parties' arm's length negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both parties forcefully advocating the positions of their respective clients. *Id*. ¶9. After additional

negotiations through Mr. Friedman, the parties reached agreement on the material terms of a settlement in August 2023. *Id*. ¶11 From the start, the parties agreed they would not negotiate the proposed class's attorney fees or plaintiff's service award until they agreed on the settlement agreement's core terms, thus avoiding conflict between plaintiff and the class. *Id.* In the weeks that followed their agreement on the material terms of the settlement, the parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Claims Administrator. *Id*. ¶12.

### D. The Settlement

As stated *supra*, the Settlement affords the class four benefits, for which all valid claims will be paid in full as there is no cap on those benefits. The first benefit category is monetary relief for losses. For "Out of Pocket" losses, Class Members may claim up to $3,500 for losses resulting from the incident, including identity theft, fraud, and costs spent mitigating those risks. ECF No. 20-2 ("Settlement Agreement" or "SA"), ¶2.1.1. To claim these benefits, a claimant need only fill out a Claim Form and submit any documents supporting their claim for relief, *Id.* For lost time, class members can claim "Attested Lost Time" at $25/hour for up to three hours. *Id.* To claim this loss, a claimant need not submit any documents, but must attest to the time they spent dealing with the incident using a check-box style form. *Id.* What is more, if a claimant spent more than three hours of time related to the incident, they can claim another two hours' time by providing documents supporting their claim. *Id*. Altogether, this relief compensates claimants up to $3,625

for losses stemming from the Data Breach. The Agreement does not cap what Lubbock must pay in valid claims—meaning every verified, valid claim will be paid in full. *See generally id.*

Second, Settlement Class members will receive credit monitoring at no cost if they submit a valid claim for credit monitoring services through the settlement. *Id.* ¶2.3. The monitoring will last for two years under three bureaus, adding "identity theft protection services" as a service. *Id.* Those services will come with fraud insurance, covering up to $1 million in losses for members who enroll. *Id.*

Third, Lubbock has confirmed it has implemented information security enhancements, affirming that "Defendant has agreed to provide sufficient documentation showing that it either has implemented or will implement various security-related measures to improve its data security. Costs associated with these information security improvements will be paid by Defendant separate and apart from other settlement benefits." *Id.* ¶2.4.  As with all other non-economic benefits, this relief will not reduce any other relief afforded to the class. *Id.*

Fourth, Lubbock will pay the cost to administer the settlement, including the Claims Administrator's costs to notify the class and process claims. *Id.* ¶2.6. This benefit will not reduce any other benefits afforded to the Settlement Class. *Id.* (Explaining that those costs "shall be paid by Defendant separate and apart from any other benefits provided to Plaintiff and the class.").

Last, the Agreement outlines how the parties were to notify the class, specifying how to do so and how to accept claims, opt-outs, and objections. *Id.* ¶3.2 Class members could object within 60 days by notifying the claims administrator, Epiq ("Epiq" or "Claims Administrator"[1]) and the parties' counsel in writing about the bases for their objection, including all the information needed to process it. *Id.* ¶5.1. To opt-out, class members could notify the Claims Administrator about their

---

[1] *See* SA ¶3.1.

choice by "clearly manifesting" their intent to opt out in writing. *Id.* ¶4.1. Otherwise, class members could submit claims on the claim form provided.

In exchange for any benefits, class members released Lubbock and Related Entities from liability related to the Data Incident. *Id.* ¶¶1.21, 6.1. However, the parties tailored the release to *only* those claims arising from the Data Incident, preserving any claims that Class Members may otherwise have against Lubbock. *Id*.

### E. Preliminary Approval, Notice, and Claims Activity

On September 8, 2023, Plaintiff moved the Court to "preliminarily" approve the Agreement and implement its terms. ECF Nos. 19, 20. Prior to ruling on the Preliminary Approval Motion, the Court ordered briefing regarding Article III standing and CAFA jurisdiction. *See* ECF Nos. 22, 23, 24, 31, 32, 33, 34, 35. After considering the merits underlying the proposal, the Court granted Plaintiff's motion, ordering the parties to hire an administrator and notify the class. ECF No. 36. Since then, the parties have carried out the Agreement's terms, serving settlement notices on class members and collecting their claims. Azari Dec. ¶¶23- 27.

The Claims Administrator was charged with notifying the class and processing class member claims. *See* Azari Dec. Epiq is an industry leader in class action administration, having implemented more than a thousand successful class action notice and settlement administration matters. Azari Dec. ¶4. Epiq has been involved with some of the most complex and significant notice programs in recent history, including providing notice in more than 575 cases and 70 multidistrict litigation settlements. *Id*. As the Claims Administrator, Epiq was required to update contacts for class members, create a settlement website, establish a toll-free number, notify the class by First Class Mail, and process claims, opt-out requests, and objections. *Id*. ¶¶23-27, 29-30, 32. As of July 16, 2024, Epiq has accomplished each task.

In April 2024, Epiq compiled 111,526 contact records for class members and sorted them through the USPS's NCOA database to ensure accuracy. *Id*. ¶¶23-25. It also set up the settlement website, www.lubbocksettlement.com that listed all settlement documents, claim forms, case details, and gave class members the chance to submit their claims online. *Id*. ¶29. Further, Epiq established a toll-free telephone number to allow Class Members to call for additional information, listen to answers to FAQs, and to request that a long form notice and/or claim form be mailed to them. *Id*. ¶30. As of July 15, 2024, the toll-free telephone number handled 268 calls representing 792 minutes of use. *Id*.

Epiq then mailed Class Members postcard notices, which clearly and concisely described the Settlement and the legal rights of the Class Members. *Id*. ¶24 The notices also directed Settlement Class Members to visit the settlement website for additional information. *Id*. The settlement website provided instructions for how Class Members could opt-out (request exclusion) from or object to the Settlement, provided contact information for the Claims Administrator, and explained how Class Members could obtain other case-related information. *Id*. ¶29. Class Members were able to file a claim form on the settlement website prior to the claim filing deadline. *Id*. 98% of Class Members submitted their claims online via the settlement website. *Id*. ¶34.

Epiq received certain postcard notices as "returned as undeliverable" by USPS. *Id*. ¶26. Notices "returned as undeliverable" were resent to any new address available through USPS information, (for example, to the address provided by the USPS on returned mail pieces for which the automatic forwarding order had expired but was still within the time period in which the USPS returned the piece with the address indicated), or to better addresses that were found using a third-party address lookup service. *Id*. Upon successfully locating better addresses, Epiq promptly remailed the notices. *Id*. As of July 15, 2024, Epiq remailed 11,564 postcard notices. *Id*.

Through these efforts, Epiq directly notified 99,598 class members, or around 89.2% of the class. *Id*. ¶28.

Epic therefore provided "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and succeeded in doing so. *Amchem*, 521 U.S. at 617. This is reflected in the claims activity following notice. The deadline to claim benefits was July 1, 2024, and Epiq has received 500 claims by that deadline. *Id*. ¶ 34.

## III.    LEGAL STANDARD

Courts approve settlements under Rule 23(e). Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). At root, the analysis centers on whether the settlement is "fair, reasonable, and adequate" *Id*. And that concept considers four factors under Rule 23(e): (i) "adequacy of representation;" (ii) whether there were "arm's length" negotiations; (iii) "adequacy of relief;" and (iv) equity between class members. *Id*. Within the third factor, "adequacy of relief," the Court considers the case's risks, how the parties propose distributing relief, attorney's fees terms, and any other agreements impacting settlement. *Id*.

These factors overlap with Fifth Circuit precedent governing the approval process. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (identifying six factors for approval). The factors consider: (i) whether there was fraud or collusion when negotiating the agreement; (ii) the case's complexity; (iii) the litigation stage and discovery taken; (iv) the risk in litigating the case; (v) the "range of possible recovery;" and (vi) whether the class, class counsel, and plaintiff recommend the settlement.

Because these factors overlap with one another, "courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris Cnty., Texas*, No. CV H-16-1414, 22019 U.S. Dist. LEXIS 151159, at *26 (S.D. Tex. Sept. 5, 2019). In so doing, a district court must "keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 U.S. Dist. LEXIS 22547, at *16 (N.D. Tex. Dec. 11, 2003). That analysis does not mandate that plaintiffs maximize their recovery: "[a] proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, requiring a plaintiff to maximize their recovery would defeat the point in settling, as "compromise is the essence of a settlement…the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978).

In other words, barring any fraud or collusion, a district court should hesitate to "substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649. The settlement here satisfies that analysis.

## IV.    ARGUMENT

### A.  The Settlement is fair, reasonable, and adequate

The settlement is fair, reasonable, and adequate under Rule 23(e) and the *Reed* factors because it delivers relief to approximately 500 current and former patients of Lubbock who submitted valid Claims following the Data Incident. This relief provides relief *now*, rather than risk not obtaining any relief in litigation. Indeed, the Settlement secures all the benefits Plaintiff sought in his suit. Depriving Class Members of the benefits the Settlement provides on the

10

speculative chance they may do better years from now would not serve the class's interests. For these reasons, the settlement satisfies all factors for approval.[2]

      i.     <u>The Court should presume the settlement is "fair, adequate, and reasonable"</u>

As set forth above, there is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources." *Klein*, 705 F. Supp. 2d 632, 650. Further, in the "absence of any evidence to the contrary," the Court may also presume that "no fraud or collusion occurred between opposing counsel[.]" *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 U.S. Dist. LEXIS 227456, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018).

Plaintiff and his counsel qualify for this enhanced, "strong presumption." While the parties' arm's length negotiations were always collegial, cordial, and professional, there was no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients. Borrelli Dec. ¶¶10-11. Those positions were informed by pre-mediation discovery exchanged under FRE 408, allowing Plaintiff's counsel to understand the landscape affecting settlement. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses"). And they avoided any collusion when they insisted that the parties agree on the class's benefits before negotiating Plaintiffs' attorney fees or service award. Borrelli Dec. ¶10.

As a result, the parties fulfilled what Rule 23(e) and caselaw expect under this factor, entitling them to start this analysis with the "presumption of fairness."

      ii.     <u>Plaintiff and his counsel represented the class "adequately"</u>

---

[2] Because the *Reed* factors overlap with the factors under Rule 23, Plaintiff consolidates the analysis below.

Plaintiff and his attorneys satisfy Rule 23(e)(2)(A) because they litigated the class's claims without conflict with the class and have established that they put the class's interests before their own. *See generally* (Borrelli Dec., ¶10); *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1055 (adequacy satisfied when class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"). There is also no evidence that Plaintiff's interest conflicted with the class, as they were "typical" class members seeking the same relief as the class and they are guaranteed nothing more than the class will receive.

To reach this result, class counsel investigated the class's claims when litigating them in Court and when exploring settlement with Lubbock and insisted on "informal discovery in advance of exploring settlement to ensure Class Counsel had sufficient facts and information to make an informed decision about resolution[.]" Borrelli Dec. ¶9. Thus, counsel had a "full understanding of the legal and factual issues surrounding this case" when agreeing to explore settlement. *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). And that work preceded counsel's efforts in "mediating the dispute, review[ing] confidential confirmatory discovery, draft[ing] the settlement agreement and exhibits, prepar[ing] and submit[ing] the Motion for Preliminary approval (which was ultimately granted), and implement[ing] the parties' settlement[.]" ECF No. 40 ("Borrelli Fee Dec."), ¶6. For these reasons, Plaintiff has satisfied the "adequacy" factors.

iii.    This case's risks, complexity, and expense justify settlement at this stage

There is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). And this case is not only "complex"—"it lies within an especially risky field of litigation: data breach." *Desue v. 20/20 Eye Care Network,*

*Inc.*, No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS 117355, at *24 (S.D. Fla. July 8, 2023). This is why courts favor settling breach cases. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein*, 705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). Although Plaintiff believed his claims were strong and that he would have overcome the hurdles of a motion to dismiss, class certification, dispositive motion briefing, and trial, given the challenges faced in any complex litigation (which are even more acute in the developing area of data breach), the risks justified settling at the stage Plaintiff did. *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("Settling now avoids the risks and burdens of potentially protracted litigation.").

And although the parties have settled this matter without "formal" discovery, that is no bar to settlement. *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999) (The "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed."). Again, the Settlement achieves what Plaintiff desired when he filed his complaint— compensation for the class's claimed losses, and protection against future risk. There is no reason to risk losing the benefits of recovery entirely by refusing to settle on those terms.

iv.    <u>Class counsel recommends the settlement</u>

The Court should consider class's counsel opinion on settlement because "[t]he Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight"

when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos v. Allstate Corp.*, 240 F.R.D. at 292 ("The endorsement of class counsel is entitled to deference."). As class counsel explains by declaration, they understand how data breach cases work and the factors to consider when litigating them. Borrell Fee Decl., ¶¶ 16-21. They also understand how the relief secured here exceeds that achieved in other cases. *Id*. ¶16 ("Of the various forms of relief available in national consumer protection class actions (injunctive, declaratory, coupons, gift cards, cash compensation, etc.), the relief obtained by Class Counsel in this case is of the most preferable form: remedial relief plus cash compensation."). The Court should accept this judgment when weighing the approval. *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'"). As a result, Plaintiff satisfies this factor.

  v. <u>The method for delivering relief supports approval</u>

   If the Court approves the settlement, Epiq will pay verified claims and facilitate enrollment in credit monitoring as claimed by the class. Given that Epiq has experience in delivering relief like this—including implementing more than a thousand successful class action notice and settlement administration matters, Plaintiff trusts that the class will receive what they qualify for under the settlement. Dec. of Azari ¶4.

  vi. <u>The settlement treats class members "equitably"</u>

   Plaintiff satisfies the factor under Rule 23(e)(2)(D) because all class members are treated "equitably." Epiq notified all class members using the same methods, reaching 89.2% of them and affording them the same options. And although their recoveries may vary in amount, that does not

render the relief "inequitable," as it compensates them for their "relative" losses. *Spegele v. USAA Life Ins. Co.*, No. 5:17-cv-967-OLG, 2021 U.S. Dist. LEXIS 204744, at *30 (W.D. Tex. Aug. 26, 2021) (approving a settlement that award differing recoveries based on a formula that considered class member's "relative" losses). What's more, the relief is "adequate" because there is no cap on what Lubbock must pay under the Agreement, meaning Lubbock will pay every verified and valid claim in full.

       vii.    <u>Class members have not objected to the settlement</u>

As Epiq explains by declaration, no class members objected to the settlement and only eight class members chose to opt out—speaking to the positive response to it. Azari Dec. ¶32. As a result, the Court should find this factor supports settlement.

**B. The Court should finally certify the settlement class**

Settlement classes are routinely certified in consumer data breach cases. There is nothing unique about this case that would counsel otherwise. This Court already found when it preliminarily approved the Settlement that it likely would certify the class. The class still meets the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve Class Member claims, the Court should finally certify the Settlement Class for settlement purposes. For completeness, Plaintiff addresses the Rule 23(a) and (b) factors below, and also incorporates by reference the analysis in his preliminary approval motion (*see* ECF No. 20 at 13-19).

***Numerosity***. The class satisfies Rule 23(a)(1) because it is "so numerous that joinder of all members is impractical." In the Fifth Circuit, even a class with 100 members "is within the range that generally satisfie[s] the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186

F.3d 620, 624 (5th Cir. 1999). With over 120,000 members, this class surpasses the standard for establishing numerosity.

*Commonality*. Mr. Lara has shown "commonality" for purposes of settlement because his claims involve "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). All class members share the same questions with their claims, including whether Lubbock failed in its duties to protect their PII and PHI and thus harmed them. These questions satisfy the "commonality" factor. *See In re Heartland*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011)) (the questions linking class members must be "apt to drive the resolution of the litigation" by generating "common" answers, even if class members).

*Typicality*. Mr. Lara satisfies this factor because his claims are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality exists when the representative's claims "arise from a similar course of conduct and share the same legal theory[.]" *Stott v. Capital Fin. Servs.*, 277 F.R.D. 316, 325 (N.D. Tex. 2011) (internal quotations and citation omitted). Mr. Lara satisfies this factor because the Settlement Class's claims all arise from the same event—the data incident—and all rely on the same liability theories.

*Adequacy*. Mr. Lara and his counsel are more than "adequate." There is no "antagonism or conflict of interest between" the class and Mr. Lara. See *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Mr. Lara and the Settlement Class are entitled to the same benefits under the Settlement, and his request for a service award does not impact what the class will receive, even if the Court denies it. Additionally, Settlement Class Counsel is adequate because they are class action attorneys who know how to litigate data security cases and settle them on terms that are "fair, adequate, and reasonable." *See* ECF No. 40-1 (Strauss Borrelli PLLC Firm Resume).

*Predominance and Superiority*. Under Rule 23(b), Mr. Lara establishes that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). First, for the purposes of settlement, the issues affecting the class predominate over all other questions. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Those issues center on whether Lubbock failed to protect the class's PII and PHI despite its duties to do so, leading the class to suffer losses stemming from the incident. And resolving this case classwide is "superior" to each class member asserting their own claims.

Thus, certification of the Settlement Class is merited under Rule 23(a) and pertinent Rule 23(b) factors.

## C.  The Notice Plan Complied with Rule 23 and Due Process

The Court should approve the notice plan because the parties directed "notice in a reasonable manner" under Rule 23. Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. *Id*. "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*. To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). Notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. Fed. R. Civ. P. 23(c)(2)(B).

Having notified 89.2% of class members with the details demanded by caselaw, the notice program satisfied this prong. The parties used First Class Mail to alert class members to the settlement, a recognized notice method. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed class members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through and attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed class members to easily find any section that they may be looking for. Thus, it was substantively adequate.

Epiq also set up a website for class members to review all case documents and review the settlement's details, ensuring they could claim benefits with ease. This effort exceeds what Plaintiff must show to carry their burden on the due process prong. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), cert. denied sub nom. *Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

## V.    CONCLUSION

For the reasons above, the Court should enter an order finally approving the parties' settlement, certifying the class for purposes of judgment on the Settlement, and granting Plaintiff's request for attorneys' fees, costs, and service awards.

Dated: July 16, 2024                    Respectfully Submitted,

                                        By:  */s/ Raina C. Borrelli*
                                             Raina C. Borrelli (*pro hac vice*)
                                             STRAUSS BORRELLI PLLC
                                             One Magnificent Mile
                                             980 N. Michigan Avenue, Suite 1610
                                             Chicago, IL, 60611
                                             Telephone: (872) 263-1100
                                             Facsimile: (872) 263-1109
                                             raina@straussborrelli.com

                                             Joe Kendall
                                             KENDALL LAW GROUP PLLC
                                             3811 Turtle Creek Blvd., Suite 1450
                                             Dallas, TX 75219
                                             Telephone: (214) 744-3000
                                             Facsimile: (214) 744-3015
                                             jkendall@kendalllawgroup.com

                                             *Attorneys for Plaintiff and the Proposed Class*

19

## <u>CERTIFICATE OF SERVICE</u>

I, Raina C. Borrelli, hereby certify that on July 16, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 16th day of July, 2024.

        STRAUSS BORRELLI PLLC

        By:  */s/ Raina C. Borrelli*
            Raina C. Borrelli
            raina@straussborrelli.com
            STRAUSS BORRELLI PLLC
            One Magnificent Mile
            980 N Michigan Avenue, Suite 1610
            Chicago IL, 60611
            Telephone: (872) 263-1100
            Facsimile: (872) 263-1109