UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

JOE LARA, on behalf of himself and all
others similarly situated,

     Plaintiff,

v.                                                                     No. 5:23-CV-036-H

LUBBOCK HEART HOSPITAL, LLC
d/b/a LUBBOCK HEART & SURGICAL
HOSPITAL,

     Defendant.

**ORDER AND FINAL JUDGMENT GRANTING
APPROVAL OF CLASS ACTION SETTLEMENT**

Before the Court is the plaintiff's Unopposed Motion for Final Approval of Class

Action Settlement (Dkt. No. 42) and the plaintiff's Motion to Approve Attorney's Fees,

Costs and Service Award (Dkt. No. 38). The Court held a final fairness hearing on the

settlement on July 30, 2024. Dkt. No. 49. For the reasons that follow and those stated at

the hearing, the Court grants the motions, certifies the class for purposes of settlement,

approves the class action settlement as fair, reasonable, and adequate, and dismisses the

plaintiff's claims with prejudice in light of the settlement. The Court awards class counsel

$262,500 in attorneys' fees and a service award of $2,500 to Joe Lara. The Clerk of Court is

directed to close the case.

1.      **Factual and Procedural Background**

As alleged in the plaintiff's complaint, on July 11, 2022, the defendant, Lubbock

Heart Hospital, was hacked, exposing personal identifying and health information of

thousands of Lubbock Heart Hospital's patients. Dkt. No. 1 ¶¶ 16–18. This information

included patients' names, dates of birth, Social Security numbers, diagnosis information,

treatment information, and health insurance information. *Id.* ¶ 18. Several months after the breach, Lubbock Heart Hospital sent notices to affected patients. *Id.* ¶¶ 19–27.

The plaintiff, Joe Lara, is a former patient of Lubbock Heart Hospital who received such a notice. *Id.* ¶¶ 29, 34. He claims that this data breach has injured him due to an increased risk of identity theft, time spent monitoring his credit, anxiety, a breach of an implied contract with the defendant, and an invasion of his privacy rights. *Id.* ¶¶ 35–42. He brought this class action on behalf of himself and "all persons who were sent written notification by [the d]efendant that their [p]rivate [i]nformation was potentially comprised as a result of the [data breach]." *Id.* ¶ 6; Dkt. No. 20 at 11.

Lara and the defendant have reached a settlement agreement, which the Court previously preliminarily approved. Dkt. Nos. 19 at 1; 36. In accordance with the requirements of the Class Action Fairness Act (CAFA), notice of the proposed settlement was sent to the Attorneys General of all 50 states, the District of Columbia, the United States Territories, and the United States. *See* Dkt. No. 32-2. Following the preliminary approval, the claims administrator issued notices to class members, informing them of the settlement. *See* Dkt. No. 44 at 10–14. 500 of the 111,526 identified class members submitted claims, 8 requested to be excluded from the class, and no member objected. *See id.* at 14. On July 30, 2024, the Court held an in-person final fairness hearing on the settlement. Dkt. No. 49. Accordingly, the motions for final approval, attorneys' fees, costs, and a service award are now ripe for review.

## 2.    Legal Standards

Pursuant to Federal Rule of Civil Procedure 23, "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be

settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). When faced with a class proposed to be certified only for settlement, the Court must first ensure that certification would be proper under Rule 23(a) and (b) and then determine whether Rule 23(e)'s settlement requirements are satisfied. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–22 (1997); *Kostka v. Dickey's Barbecue Rest., Inc.*, No. 3:20-cv-3424-K, 2022 WL 16821685, at \*2 (N.D. Tex. Oct. 14, 2022), *report and recommendation adopted by* 2022 WL 16821665 (Nov. 8, 2022). For final approval, the plaintiff must establish Rule 23's requirements by a preponderance of the evidence. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1052 (S.D. Tex. 2012) (citing *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 228–29 (5th Cir. 2009)).

### A.    Class Certification

Class certification involves two components. First, Rule 23(a)'s prerequisite requirements—numerosity, commonality, typicality, and adequacy of representation—must be satisfied. Fed. R. Civ. P. 23(a); *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016). Numerosity is satisfied where "joinder of all members is impracticable," looking to the number of members, their geographic dispersion, their ease of identification, the nature of the action, and the size of their claims. Fed. R. Civ. P. 23(a)(1); *Ibe*, 836 F.3d at 528 (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)). Commonality requires at least "a single common question of law or fact" to the class whose resolution "will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." *Ibe*, 836 F.3d at 528 (alteration in original) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). A class representative demonstrates

– 3 –

typicality when the legal and remedial theories behind his claim are similar with those of the class. *Id.* at 528–29. And adequacy of representation "requires the class representative[] to possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation." *Id.* at 529 (*quoting Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 482–83 (5th Cir. 2001)). In addition, Rule 23 contains "an implied prerequisite" that the class must be ascertainable, meaning that the class must be defined in a manner such that the Court can determine who is a member. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 & n.3 (5th Cir. 2007).

If the prerequisites are satisfied, a court must determine whether the class action satisfies one of the types of class actions set forth in Rule 23(b). Fed. R. Civ. P. 23(b). Here, the plaintiff seeks certification of a Rule 23(b)(3) class, which requires the Court to find that "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Rule 23(b) sets forth four relevant factors for this superiority inquiry; however, because certification here is solely for settlement purposes, the Court need not consider the fourth factor. *Id.*; *Amchem Prods., Inc.*, 521 U.S. at 620. Accordingly, to determine whether a class action is a superior method to resolve this controversy, the Court must inquire into a class member's interest in individually controlling a separate action, the extent and nature of other litigation on this controversy, and the desirability of concentrating the litigation in this forum. Fed. R. Civ. P. 23(b)(3)(A)–(C).

### B.    Settlement Requirements

If certification is proper, the Court must next determine whether the settlement should be approved under Rule 23(e).  For this inquiry, the Court first evaluates the fairness of the proposed terms of the settlement.  *McNamara v. Bre-X Mins. Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002).

In the Fifth Circuit, courts traditionally apply a six-factor test, known as the *Reed* test, to determine whether a settlement is fair:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 293 (5th Cir. 2017) (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).  Further, Rule 23(e)(2) provides specific factors, which largely overlap with the *Reed* test, to determine whether a settlement should be approved.[1]  *See* Fed. R. Civ. P. 23(e)(2).

### 3.    Approval of the Settlement[2]

The Court grants the motion for final approval of the settlement.  The Court finds that the settlement class satisfies the certification requirements and that the settlement satisfies Rule 23(e).

---

[1] These factors were added to Rule 23 in the 2018 amendments but do not "displace any factor" from the Fifth Circuit's test.  Fed. R. Civ. P. 23(e)(2) advisory committee's note to the 2018 amendment.

[2] For purposes of this Order and Final Judgment, various capitalized terms have the definitions set forth in the proposed Settlement Agreement (Dkt. No. 20-1).

**A.      The settlement class meets the requirements of Rule 23(a) and (b) for certification.**

The parties' Settlement Agreement defines the relevant Settlement Class as "all persons who were sent written notification by Defendant that their Private Information was potentially compromised as the result of the Data Incident Defendant determined took place in July 2022." Dkt. No. 20-1 at 8–9. The Class excludes:

> (i) Defendant, the Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge.

*Id.* The Court, for purposes of settlement only, finds that the Settlement Class satisfies Rule 23(a) and (b)(3).

First, the definition provided by the parties is sufficiently definite to satisfy ascertainability. Whether someone belongs in the class turns on whether he received the written notification from the defendant regarding the breach. This definition is "administratively feasible for the [C]ourt" to apply and therefore satisfies "the touchstone of ascertainability." *Kostka*, 2022 WL 16821685, at *8 (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)). Moreover, the actual notice process further demonstrated that this class is ascertainable as the defendant was able to supply the identity of the class members to the claims administrator who then provided direct notice to the members. *See* Dkt. No. 44 at 11–13.

Numerosity is also satisfied here. A class of "100 to 150 members . . . is within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). The class here includes 111,526 unique identified

members.  *See* Dkt. No. 44 at 13.  Joinder of over 100,000 individuals in this action is clearly impracticable and greatly exceeds the 100-members threshold.

Next, the class shares common questions of law or fact appropriate for class-wide resolution.  The implied-breach-of-contract claim first requires determining whether there was an implied contract between Lubbock Heart Hospital and the class members, which turns on whether there was an agreement that the defendant would protect their data as part of its provision of health care services.  Moreover, "the scope of this agreement—what data-security measures [the defendant] promised to implement in this implied contract—will also be common to every individual class member's claim." *Kostka*, 2022 WL 16821685, at *7.  Finally, whether the defendant breached this claimed promise is also shared by the class members.  Each question will result in a common answer that will "drive the resolution" of the implied-breach-of-contract claim.  *See Flecha v. Medicredit, Inc.*, 946 F.3d 762, 767 (5th Cir. 2020) (quoting *Dukes*, 564 U.S. at 767).  Other courts in this district have similarly found commonality to be satisfied in data breach cases.  *See Kostka*, 2022 WL 16821685, at *7 (collecting cases).  Accordingly, commonality is satisfied.

Lara's claims are also typical of the Settlement Class.  Lara and the other members of the Settlement Class were impacted by the same data breach, which forms the factual basis for all of their claims.  In addition, Lara's asserted implied contract and the breach of that contract are identical to the other class members.  As a result, Lara's claims turn on the same legal theories and facts as the class, and he therefore satisfies typicality.  *See Ibe*, 836 F.3d at 528–29.

In addition, Lara and the class counsel adequately represent the class.  Adequacy looks to "whether the putative class representatives are willing and able to take an active

– 7 –

role in and control the litigation and to protect the interests of the absentees." *Berger*, 257 F.3d at 479 (internal quotation marks omitted). Courts must consider whether there are conflicts of interest between the representatives and the class. *Id.* at 480. Here, Lara and the class counsel have taken an active role in the litigation as demonstrated by their efforts to obtain the proposed Settlement Agreement. Through their negotiations, they have sought to provide the class with relief for their asserted injuries. There is no evidence of any conflicts between them and the class. "[T]he parties agreed that they would not negotiate the proposed class's attorney fees or [the] plaintiff's service award until they agreed on the settlement agreement's core terms." Dkt. No. 20-2 at 3. The Settlement Agreement only entitles Lara to the benefits of the class, and he only requests a modest service award, which has no impact on the benefits for the class. *See* Dkt. No. 20-1 at 25–26. The proposed class counsel also is experienced. Borrelli has over a decade of experience in representing individuals in complex class actions, including data-breach cases. Dkt. No. 20-2 at 4; *see also id.* at 5–7; Dkt. No. 20-3 at 3–12, 17–19. Kendall has been licensed in Texas for 42 years, is a former United States District Judge in this district, and has served as counsel in numerous class actions. Dkt. Nos. 20-2 at 7; 20-4 at 2–13.

Finally, the class satisfies the predominance and superiority requirements of Rule 23(b)(3). Predominance looks at "whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is "readily met in certain cases alleging consumer or securities fraud." *Amchem Prods., Inc.*, 521 U.S. at 623, 625. As the Court has discussed, this case turns on questions that apply identically to all class members: (1) what agreement, if any, was there between Lubbock Heart Hospital and the class members regarding protection of their identifying information; and (2) whether Lubbock Heart

Hospital breached any such agreement and failed to adequately protect their information. All class members are affected by the same data breach. These common issues predominate over any issue as to the different amount of damages each has suffered.

As for superiority, it is desirable to resolve these claims in a single case. Given the large overlap in issues, it would be wasteful for each class member to individually litigate these issues. In addition, their recovery from an individual lawsuit could easily be outweighed by litigation costs. This "problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights" is "[t]he policy at the very core of the class action mechanism." *Id.* at 617 (quotation omitted). This Court is also a desirable forum to litigate these claims given that Lubbock Heart Hospital is located within the division where this case is pending.

In sum, the Court, for purposes of settlement only, concludes that the Settlement Class satisfies the requirements of Rule 23(a) and (b)(3).

**B.    The proposed Settlement Agreement is fair, reasonable, and adequate.**

The Court also concludes that the Settlement Agreement satisfies Rule 23(e)(2) and the *Reed* factors. Pursuant to Rule 23(e)(2), the Court must consider whether (1) "the class representative[] and class counsel have adequately represented the class"; (2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate"; and (4) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). All of these factors support approval here.

**i.    Lara and class counsel have adequately represented the class.**

First, as previously discussed in the Rule 23(a) analysis, Lara and his counsel adequately represented the class. Counsel is highly experienced in handling class actions

and reached this settlement following their review of discovery materials. Dkt. Nos. 20-2 at 3–7; 20-3 at 3–12, 17–19; 20-4 at 2–13. Lara's interests are aligned with those of the proposed class as he will receive the same benefits from the settlement as them. And both counsel and Lara have demonstrated their commitment to this case through their negotiations of the settlement.

### ii. The Settlement Agreement was negotiated at arm's length.

Second, the Settlement Agreement was negotiated at arm's length. The Court "may presume that a proposed settlement is fair and reasonable, and lacking fraud or collusion, when it is the result of arm's-length negotiations." *Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018) (citing *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007)). Moreover, unless there is evidence to the contrary, the Court presumes that "no fraud or collusion occurred." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010). The parties first met with an experienced mediator in June 2023 to try to resolve this case. Dkt. No. 20-2 at 3. During those discussions, they "communicat[ed] their positions through [the mediator] and evaluat[ed] the strengths and weaknesses underling their claims and defenses." *Id.* The negotiations involved both sides "forcefully advocating the position of their respective clients." Dkt. No. 40 at 3. They did not settle at the mediation but created a framework that led to this Settlement Agreement. Dkt. No. 20-2 at 3. Their use of a mediator and the absence of any evidence of fraud or collusion indicates that the Settlement Agreement was negotiated at arm's length.

### iii.    The Settlement Agreement's relief is adequate.

Third, the proposed relief for the class is adequate.  In considering the adequacy of the relief, courts look to (1) the risks and costs of trial and appeal; (2) the effectiveness of the proposed method to process class-member claims and distribute relief; (3) the terms of attorney's fees; and (4) any agreement made in connection with the proposal.  Fed. R. Civ. P. 23(e)(2)(C), (3).  The risks and costs of trial and appeal include "the complexity, expense, and likely duration of the litigation; the stage of the proceeding and the amount of discovery completed; the probability of plaintiff's success on the merits; and the range of possible recovery."  *Jones*, 865 F.3d at 293 (cleaned up) (quoting *Reed*, 703 F.2d at 172); *Kostka*, 2022 WL 16821685, at *11.

This litigation presents significant risks and is only at the pleading stage.  There is little caselaw from the Fifth Circuit involving data-breach cases, and most of those cases address indemnity issues not the merits of such claims.  *Kostka*, 2022 WL 16821685, at *11; *see, e.g.*, *Paymentech, L.L.C. v. Landry's Inc.*, 60 F.4th 918, 921 (5th Cir. 2023); *Landry's Inc. v. Ins. Co. of the State of Pa.*, 4 F.4th 366, 367 (5th Cir. 2021).  These cases often include difficult questions regarding standing, *see Tsao v. Captiva MVP Rest. Partners, LLP*, 986 F.3d 1332, 1340–44 (11th Cir. 2021) (collecting cases); *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 853–57 (S.D. Tex. 2015), and while the complaint's allegations are sufficient for at least one claim, the class members could struggle to demonstrate standing at a later stage or to prove that they had an implied contract.  *See* Dkt. Nos. 1 ¶¶ 113–26; 22 at 4.  Moreover, class actions as a general matter are complex and costly.  "The fact that the case is now only at the pleading stage indicates that the greatest costs of potential litigation are still ahead, to

say nothing of potential appeals." *Kostka*, 2022 WL 16821685, at *11. Ensuring that the

class members obtain relief in light of these significant risks and future costs favors approval.

As for the range of possible recovery, it is not fully evident what relief the class

members would obtain if they succeeded at trial. Many class members may be unable to

prove actual damages and therefore would have minimal recovery, if any. And it is far from

clear than any recovery would exceed the costs of litigation in light of the substantial risks

and lengthy proceedings remaining. This Settlement Agreement provides recovery that is

similar to or better than settlements in other data breach cases. *See* Dkt. No. 20-1 at 11–13;

*e.g.*, Exhibit 1 to Motion for Preliminary Approval of Class Action Settlement at 8, 11–13,

*Kostka*, 2022 WL 16821685 (N.D. Tex. Aug. 14, 2021) (No. 3:20-CV-3424-K), ECF No. 62-

1; Order Preliminarily Approving Settlement, *Brady v. Due North Holdings, LLC*, No. 1:17-

CV-1313 (S.D. Ind. May 14, 2018), ECF No. 52; Plaintiffs' Unopposed Motion for

Preliminary Approval of Class Action Settlement at 4–7, *Brady*, No. 1:17-CV-1313 (S.D.

Ind. May 6, 2018), ECF No. 50. The relief provided to the class members includes both

cash compensation and remedial relief. The Settlement Agreement provides reimbursement

up to $3,500 per class member for documented out-of-pocket expenses and some

reimbursement for lost time, along with credit monitoring. Dkt. No. 20-1 at 11–13. Unlike

many settlements for data breach cases that limit the overall pool of money available to class

members, this one does not cap the total amount that the defendant must pay for valid

claims. *See* Dkt. Nos. 20 at 19 (collecting cases); *e.g.*, Plaintiffs' Unopposed Motion for

Preliminary Approval of Class Action Settlement at 6, *Brady*, No. 1:17-CV-1313 (S.D. Ind.

May 6, 2018), ECF No. 50 (providing that "the sum of the total reimbursement paid under

[certain claims] to all Settlement Class Members shall not exceed $50,000"). Accordingly, this further indicates the fairness and adequacy of the Settlement Agreement.

As for the effectiveness of the method of processing claims and distributing relief, this also supports approval. Class members simply need to fill out the claims form and provide documentation as necessary. *See* Dkt. No. 20-1 at 13–14; *see also* Dkt. No. 44 (detailing the claims administrator's, Epiq, efforts and experience in providing notice and distributing relief). If a form is inadequate, the experienced claims administrator must request additional information and provide the claimant with an opportunity to cure. *Id.* at 14. This process—submitting a claim form to be considered by an experienced claims administrator—favors approval. *Kostka*, 2022 WL 16821685, at *12.

The attorney's-fees agreement was negotiated separate from the Settlement Agreement and does not impact the overall funds available to class members. *See* Dkt. Nos. 20 at 15; 20-1 at 25. The Settlement Agreement itself notes that the defendant "has agreed to not object" to attorney's fees "in an amount not to exceed $262,500," and the notice also identified this possible fee award and therefore allowed members of the Settlement Class an opportunity to object if they believed that the amount of potential fees at issue is unfair. Dkt. No. 20-1 at 25, 43. No class member has done so. And the Settlement Agreement is not contingent on any amount of attorney's fees or a service award to Lara. Dkt. No. 20-1 at 26. This factor also supports finding that the Settlement Agreement is fair, reasonable, and adequate. *Spegele v. USAA Life Ins. Co.*, No. 5:17-cv-967-OLG, 2021 WL 4935978, at *6 (W.D. Tex. Aug. 26, 2021).

As for the opinions of class counsel, the class representatives, and absent class members, these also point to the adequacy of the settlement. Class counsel, who are

experienced in complex class actions and data breach cases specifically, have expressed their view that the settlement is highly beneficial to the class members in light of their experience, the risks of litigation, and possible outcomes. *See* Dkt. Nos. 40 at 4–6; 41 at 15–17.  Mr. Lara's affidavit states that he believes the settlement "is fair, adequate, and reasonable, and in the best interests of the Class."  Dkt. No. 41 at 2.  And the lack of objections despite the large number of class members and notices provided further indicates the adequacy of the settlement. *See In re Heartland Payment Sys.,* 851 F. Supp. 2d at 1068.

The final consideration regarding the adequacy of the settlement is any agreement covered by Rule 23(e)(3).  The parties have not identified any such agreements, besides the previously discussed attorneys' fees and service award, which were negotiated after the core terms of the settlement were agreed to and require separate court approval, so this factor in inapplicable. *See generally* Dkt. No. 20.

Accordingly, these various considerations demonstrate that the Settlement Agreement provides adequate relief to the class members and therefore favor approval.

### iv.    The Settlement Agreement treats class members equitably.

The final consideration stated in Rule 23(e) regarding a settlement's fairness, reasonableness, and adequacy is whether it "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  This factor also supports approval.  Equitable treatment does not require equal treatment of class members. *Kostka*, 2022 WL 16821685, at *13.  Instead, it is proper for a class member's recovery to depend on the strength of his claim. *Id.*  Under the Settlement Agreement, each class member may recover up to $3,500 for their out-of-pocket expenses and up to $125 for attested and documented lost time.  Dkt. No. 20-1 at 11–12.  While the amount of recovery by each class member will differ based on

– 14 –

those expenses, these distinctions based on documented losses properly accounts for the strength of their claims and show equitable treatment of the members. *Kostka*, 2022 WL 16821685, at *13.

In sum, applying the required factors, the Court determines that they all weigh in favor of finding that the Settlement Agreement is fair, reasonable, and adequate.

### C.    The provided notice to the class members was sufficient.

Finally, the Court finds that the notice provided to the class members complied with Rule 23's due process requirements. Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). This "settlement notice need only satisfy the 'broad reasonableness standards imposed by due process,'" which "requires that class members be given information reasonably necessary for them to make a decision whether to object to the settlement." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (quotation omitted).

The notice program here entailed sending 111,526 postcard notices to identified class members via USPS first-class mail. *See* Dkt. No. 44 at 11. The claims administrator undertook efforts to verify these addresses prior to mailing, and upon locating better addresses, it remailed 11,564 short postcard notices. *Id.* at 12. The process resulted in the short notice reaching 99,598 of the 111,526 identified class members, or 89% of the total class. *Id.* at 13. The short notice informed class members that a settlement had been reached based on claims from the July 11, 2022, data breach. Dkt. No. 44 at 84. It outlined the settlement benefits and how to submit a claim form. *Id.* It provided the deadline for claim forms in bold. *Id.* Further, it warned members of the consequences of failing to object

or exclude themselves from the class and the deadline to do so. *Id.* It also noted this hearing and that the Court would also consider motions for attorneys' fees in the amount of $262,500 and a service award of $2,500. *Id.* Finally, the short notice directed the class members to the settlement website or a toll-free number for any additional information, including a copy of the settlement agreement and motions. *Id.* The settlement website provided detailed information about the case, relevant filings, and instructions on opting out and filing claims forms. The phone number also provided a method for class members to seek additional information and request a long form notice or claims form to be mailed to them. Class members had 60 days from the commencement of the notice process to opt-out or object and 90 days to file a claim. *See* Dkt. No. 36 at 28; *see also* Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Checklist & Plain Language Guide* 4 (2010) (noting that 60 to 90 days is the preferred amount of time to allow class members to exercise their rights).

Although the notice process resulted in a low response rate, with only 500 claims forms submitted and eight requests for exclusion, *see* Dkt. No. 44 at 14, the Court concludes that this notice process comported with due process by providing proper notice to the class members and enabled them to assess whether to object or seek exclusion. *See Kostka*, 2022 WL 16821685, at *14–15; *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1061–62. Almost 90% of class members received direct notice mailed to them of the settlement that identified its key terms, what steps they needed to take to obtain relief, and the consequences of failing to act by certain dates. *See* Dkt. No. 44 at 13; *see also* Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr., *Managing Class Action Litigation: A Pocket Guide for Judges* 27 (3d ed. 2010) (noting that the "norm" is reaching "70–95%" of the class). The class members further were given multiple avenues to seek out additional information on the settlement.

All of this information was given in plain language, ensuring that the members receiving direct notice were made aware of their rights and the consequences of inaction. Accordingly, the Court concludes that the notice given pursuant to the Court's preliminary approval order provided the class members with the material terms of the settlement and constituted the best notice practicable under the circumstances.

**D.    The Court concludes that the Settlement Agreement should be approved.**

Having considered the requirements set forth in Rule 23 and binding precedent, the Court finally approves the settlement, appoints Lara as the class representative, and appoints Borrelli and Kendall as class counsel. Accordingly, the Court grants the plaintiff's motion for final approval. Dkt. No. 42.

**4.    Service Award for the Plaintiff**

The Court next turns to the request for a service award for Lara as class representative. In class actions cases, courts provide service "awards to class representatives to reimburse them for costs incurred as a result of their participation in the litigation" or to compensate them for their efforts in the litigation, such as participating in the settlement process or responding to discovery. *Lee v. Metrocare Servs.*, No. 3:13-cv-2349-O, 2015 WL 13729679, at *4 (N.D. Tex. July 1, 2015). Courts consider various factors in determining the propriety of a service award, such as "(1) actions the plaintiff took to protect the interests of the class; (2) the degree to which the class benefitted from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (quoting *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1089).

Lara seeks a service award of $2,500, citing his assistance in providing facts and documents for preparing the complaint, his efforts in the settlement process to represent the

class, and his willingness to undergo depositions and testify at trial if it had been necessary. *See* Dkt. Nos. 39 at 21; 41 at 2.  Lara's time and efforts in bringing this litigation and representing the class through the settlement process has brought about a favorable result to the class in providing both cash compensation and remedial relief.  The requested service award is in line with typical service awards.  *See Del Carmen v. R.A. Rogers, Inc.*, No. SA-16-CA-971-FB (HJB), 2018 WL 6430835, at *2 n.2 (W.D. Tex. Oct. 18, 2018); *Armstrong v. Kimberly-Clark Corp.*, Nos. 3:20-CV-3150-M & 3:21-CV-01484-M, 2024 WL 1123034, at *7 (N.D. Tex. Mar. 14, 2024).  Of note, unlike many class action settlements, any service award is separate from the funds awarded to the class.  *Cf. Lee*, 2015 WL 13729679, at *4, *8.  Thus, an award to Lara does not detract from possible recovery to other members.  Accordingly, in light of Lara's efforts to advance the litigation and protect the class's interests, the Court finds that the $2,500 is a reasonable service award and grants the award.

**5.     Attorneys' Fees and Costs**

Finally, class counsel requests $262,500 in attorneys' fees, costs, and expenses, $10,360.78 of which represents reasonably and necessarily incurred expenses.  *See* Dkt. No. 38 at 1; 48 at 2.  The Court finds that this is a reasonable request and grants the award in full.

Rule 23(h) permits a court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The parties here agree to an award of attorneys' fees and costs.  *See* Dkt. No. 38 at 1 n.1.  And the procedures set forth in Rule 23 have been followed: the motion was timely filed in accordance with the deadline set by the Court's prior order; class members were directed to the settlement website where the motion was filed and provided an opportunity to object;

and the Court held a hearing on the request and now issues its factual findings and legal

conclusions.  *See* Fed. R. Civ. P. 23(h); Dkt. Nos. 36 at 28; 38; 44 at 14; 49.

In order "[t]o fully discharge its duty to review and approve class action settlement

agreements, a district court must assess the reasonableness of the attorneys' fees."  *Strong v.*

*BellSouth Telecomms. Inc.*, 137 F.3d 844, 849 (5th Cir. 1998).  This responsibility is "an

essential part of [the Court's] role as guardian of the interests of class members" and applies

even when the attorneys' fees will be paid from separate funds than those for the class.  *Id.* at

849–50.  A court must use the lodestar method to determine the award's reasonableness,

considering the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*:

> (1) the time and labor required, (2) the novelty and difficulty of the issues,
> (3) the skill required to perform the legal services properly, (4) the preclusion of
> other employment, (5) the customary fee, (6) whether the fee is fixed or
> contingent, (7) time limitations imposed by the client or the circumstances,
> (8) the amount involved and the results obtained, (9) the experience,
> reputation, and ability of the attorneys, (10) the undesirability of the case,
> (11) the nature and length of the professional relationship with the client, and
> (12) awards in similar cases.

*Id.* at 850 & n.4 (citing *Johnson*, 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on other*

*grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).  Fifth Circuit law requires the Court to

"utilize[] the *Johnson* framework as the basis of its analysis, . . . not proceed[] in a summary

fashion, and . . . arrive[] at an amount that can be said to be just compensation."  *Union*

*Asset Mgmt. Holdings, A.G. v. Dell, Inc.*, 669 F.3d 632, 642 (5th Cir. 2012) (quoting *Forbush v.*

*J.C. Penney Co.*, 98 F.3d 817, 823 (5th Cir. 1996)).

In addition to the lodestar method, courts in the Fifth Circuit also use often a

percentage method, which entails valuing the settlement benefits provided to the class and

determining an appropriate percentage of that recovery to award as attorneys' fees.  *See*

*Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 673 (N.D. Tex. 2010); *In re Heartland Payment Sys.*,

– 19 –

851 F. Supp. 2d at 1075. Under this approach, a court first "uses the percentage method to establish a benchmark fee and then checks this amount against a reasonableness test based on consideration of the *Johnson* factors." *Klein*, 705 F. Supp. 2d at 674. This is the approach recommended by the plaintiff. *See* Dkt. No. 39 at 13–14. However, this percentage method is typically applied in common fund cases where a lump sum is allocated between class counsel and the class. *See Union Asset Mgmt. Holdings*, 669 F.3d at 642, 644. And the Fifth Circuit has cast doubt on the use of the percentage method in a case that did "not involve a traditional common fund" but instead an award of separate funds to the attorneys and lacked an established or estimated total liability of the defendant. *See Strong*, 137 F.3d at 852 & n.7.

That said, the percentage method can still serve as a useful check to "reduce[] the risk that the amount of the fee award either overcompensates counsel in relation to the class benefits obtained or undercompensates counsel for their work" based on its "proportion[ality] to the actual value created for, and received by, the class." *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1073 (using the blended *Johnson* factors and percentage method in a case with separate funds for the class members and attorneys). And "the Fifth Circuit has never reversed a district court judge's decision to use the percentage method, and none of [its] cases preclude its use." *Union Asset Mgmt. Holdings*, 669 F.3d at 644. Indeed, it has noted advantages of the percentage method: "it allows for easy computation" and "aligns the interests of class counsel with those of the class members." *Id.* at 643. As a result, the Court will follow the standard approach of determining the value of the settlement and the appropriate percentage to award the attorneys in this matter, cross-checked with the *Johnson* factors. *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1073–75.

– 20 –

### A.    The Percentage Method

The percentage method first "requires determining the actual monetary value conferred to the class members by the settlement."  *Id.* at 1075 (quoting *Bussie v. Allamerica Fin. Corp.*, No. Civ. A. 97-40204-NMG, 1999 WL 34042, at *2 (D. Mass. May 19, 1999)). This actual monetary value turns on "the benefits actually delivered" to the class, rather than "the amount of money set aside to satisfy potential claims."  *Id.* (quoting Manual for Complex Litigation § 21.71 (4th ed. 2004)).

In determining the benefit provided to the class, class counsel argues that the Court should consider the full amount made available to the class, up to $404,281,750 in monetary compensation if each identified class member filed a valid claim for the total dollar amount available to them—$3,625 each.[3]  *See* Dkt. Nos. 20-1 at 11–12; 39 at 14; 44 at 13.  But given that the deadline to file claims has passed and only 500 claims were filed, the class will receive a fraction of that amount in benefits.  *See* Dkt. No. 44 at 14; *see also In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1075–76 (considering a smaller portion of the total possible reimbursement value in light of the actual claims filed).  Moreover, to obtain monetary compensation, class members needed to satisfy certain criteria, such as providing documentation of their out-of-pocket losses or lost time from data breach.  *See* Dkt. No. 20-1 at 11–12.  It is unclear to the Court how many of the 111,526 identified class members could qualify even if they had all filed claims.  Thus, in the Court's view, the full $404 million overstates the benefit conferred to the class.  *See In re TJX Cos. Retail Sec. Breach Litig.*, 584 F.

---

[3] The Settlement Agreement permits class members to recover up to $3,500 for documented out-of-pocket expenses, $25 for the first three hours of attested lost time, and an additional $25 for two further hours of documented lost time.  *See* Dkt. No. 20-1 at 11–12.  Thus, a class member could receive up to $3,625.  Multiplied by the 111,526 class members, this results in a potential total recovery of $404,281,750.

Supp. 2d 395, 408–09 (D. Mass. 2008) (refusing to consider the full possible payout to class members in valuing the settlement because "[a] benefit on paper is meaningless if class members do not satisfy the prerequisites to claim it").

Nevertheless, the Court will not devalue the benefit to the class to solely the amount claimed by the class. Even if class members failed to claim the benefits made available to them, this does not mean that class counsel's efforts did not provide them with that benefit. And some of the cash compensation required only an attestation of lost time, rather than the additional burden of providing documentation. *See* Dkt. No. 20-1 at 11–12 (providing that class members could "receive reimbursement for up to three hours of lost time dealing with the Data Incident (calculated at the rate of $25 per hour)"). Furthermore, as noted earlier, this settlement did not cap the total amount that the defendant must pay for valid claims, meaning that if each class member truly could demonstrate their entitlement to $3,625 under the settlement, the defendant would have been required to pay them.

In light of these considerations, the Court will estimate the cash compensation benefit to the class at $2,788,150. This represents the amount the defendant would have been obligated to pay if each of the 111,526 identified class members attested to one hour of lost time.[4] *See id.* While some class members would likely be able to demonstrate their entitlement to additional compensation, some may not have even spent an hour dealing with the data breach and thus could not receive that amount. And, again, only 500 claims were filed, some of which may ultimately be denied and result in no compensation.[5]

---

[4] 111,526 individual class members multiplied by $25 for one hour of attested time equals $2,788,150.

[5] For reference, assuming that each of the 500 claims resulted in the maximum cash compensation ($3,625), this would equal $1,812,500.

The Court further recognizes that the cash compensation is not the only benefit that the settlement provided to the class. Class members can also receive two years of free credit monitoring and identity theft restoration services, whether or not they are entitled to cash compensation. *See id.* at 13. Such credit monitoring would ordinarily "cost approximately $9/month at retail" for each class member, and the Court therefore values it at $24 million.[6] *See* Dkt. No. 39 at 15 n.3; *see also In re TJX Cos.*, 584 F. Supp. 2d at 409 (considering credit monitoring services as a benefit to the class); *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-2583-TWT, 2016 WL 6902351, at *4 (N.D. Ga. Aug. 23, 2016) (referring to "18 months [of] identity monitoring services" as "confer[ring] a substantial benefit to the [s]ettlement [c]lass"). Moreover, the settlement provides that the notice and claims processing costs shall be paid by the defendant, *see* Dkt. No. 20-1 at 15, a value that "[d]istrict courts routinely include . . . in calculating attorneys' fees awards," *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1078. The claims administrator estimates these costs at $149,418. Dkt. No. 44 at 14.

Taking these amounts into account, the Court calculates that the settlement provided a benefit of $26,937,568, or nearly $27 million, to the class. The attorneys' fees requested here—$262,500—is less than one percent of that amount, far below the 25–30% that attorneys often seek in class actions. *See Klein*, 705 F. Supp. 2d at 675. And although data breach cases specifically often have a lower percentage range of around 4–20%, this request is still below that scope. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1086 (noting percentages of 7.7%, 3.7%, and 20% of the total fund). Even if the Court limited its valuation of the settlement to its estimation of the value of the cash compensation available

---

[6] 111,526 class members multiplied by $9 per month for 24 months equals $24,089,616.

to members in the class ($2,788,150), the attorneys' fees request is around 9.4% of that amount, well within this lower range for data breach cases. Thus, the percentage method supports a finding that class counsel seeks a reasonable award of attorneys' fees.

### B.    The *Johnson* Factors

The Court's application of the *Johnson* factors further supports a finding of reasonableness of the requested award. These factors demonstrate that class counsel wisely sought a lower percentage of the fund than common in class actions. Nevertheless, this test still shows that a positive modifier to the lodestar is proper here given the difficulties and risk of the case, along with counsel's experience and efforts in bringing about a favorable result, and that the requested fees are reasonable.

### i.    Lodestar

Before turning to the *Johnson* factors themselves, the Court must first calculate the lodestar "by multiplying the number of hours reasonably expended by the reasonable hourly rate." *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 968 (E.D. Tex. 2000). After doing so, the "Court may then apply a multiplier to the lodestar, adjusting the lodestar either upward or downward." *Id.* Class counsel has provided records denoting their hours worked and requested rates. Having reviewed the billing records and counsel's affidavit, *see* Dkt. Nos. 48; 48-1; 48-2, the Court finds that the reported hours are reasonable. The Court finds that those documents adequately reflect the various discrete tasks that the attorneys and paralegals performed at different stages of the case. Further based on "its own knowledge and experience concerning reasonable and proper fees" and counsel's affidavit, the Court finds that the requested rates are reasonable for this case. *See Klein*, 705 F. Supp. 2d at 680 (quotation omitted); Dkt. No. 48 at 3–5. After multiplying the hours by the

reasonable hourly rate, the Court calculates the lodestar as $104,428.50. Thus, to reach counsel's requested attorneys' fees award of $252,139.22, excluding costs, the Court must find that a lodestar multiplier of 2.4 is appropriate under the *Johnson* factors.

### ii.    Time and Labor Required

Beginning with the time and labor required, class counsel states that they "spent significant time and effort pursing this case," engaging in informal discovery, mediation, drafting the settlement agreement, and preparing the complaint, various motions related to the settlement, and implementation of the notice process. Dkt. No. 40 at 2. Further, the Court requested additional briefing and filings at multiple points during the proceedings, sometimes on short notice. *See* Dkt. Nos. 22; 24; 33; 47. That said, this case resolved at an early stage, limiting the overall amount of time and labor required. Accordingly, the Court concludes that this factor is neutral because the lodestar adequately accounts for it.

### iii.    Novelty and Difficulty of the Issues

The second *Johnson* factor, novelty and difficulty of the issues, is a mixed bag, and is ultimately neutral. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1083. As the Court has noted, data breach cases present difficult and unsettled issues of law. But class counsel here is experienced in such cases so the matters that arose in this case are not novel to them. *See* Dkt. No. 40-1 at 15–17; *see also In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1083. "And, most important, the early settlement in this case meant that counsel did not have to wrestle with the difficult issues that likely would have been presented had the litigation reached the dispositive-motions stage." *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1083.

#### iv.    Skill Required to Perform the Legal Services

The third factor, which considers the skill required to perform the legal services, supports a positive modifier.  *See id.*  Class counsel's use of informal discovery and mediation to achieve a speedy and fair settlement points towards the counsel's skill and efforts to obtain the favorable outcome in this case.  *Id.*  And although the quick resolution of the case also avoided many of the obstacles that large-scale class actions often entail, this settlement would not have been possible without the skill of class counsel.  As a result, this factor supports a positive modifier.

#### v.    Preclusion of Other Employment

Class counsel has not identified or otherwise discussed other employment that was precluded by taking this case or particularly lucrative work that could not be accepted. Accordingly, the fourth *Johnson* factor is neutral.

#### vi.    Customary Fee/Awards in Similar Cases

Factors five and twelve all consider the nature of the fee and comparable cases, so the Court addresses them together.  As noted earlier, the customary fee in class actions is around 25–30%.  *See Klein*, 705 F. Supp. 2d at 675.  But when limited to other data breach cases, this range reduces to around 4–20%.  *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1086.  In either, the percentage requested is either beneath or at the lower end of the range, *see supra* Section 5.A, and the lodestar is even lower.  As a result, this supports a positive modifier to the lodestar.  Further, the Court notes that the requested modifier of 2.4 is common in class action cases.  *See Klein*, 705 F. Supp. 2d at 680–81 (collecting cases).

#### vii.    Fee Arrangement with Client

The sixth *Johnson* factor looks to the payment arrangement or fee quoted to the client.  *See In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1084.  Courts in the Fifth Circuit

generally find that a contingency fee "favors an increase in the typical benchmark percentage" in light of the risk that an attorney might obtain no recovery at all. *Klein*, 705 F. Supp. 2d at 678. Accordingly, this factor weighs in favor of a positive modifier.

### viii. Time Limitations Imposed by Client and Nature of Relationship with Client

Factors seven and eleven look to the client—any time limitations imposed by the client or the circumstances and the nature and length of the attorney's relationship with the client. Neither factor is applicable here.

### ix. Amount Involved and Results Obtained

Courts recognize the eighth factor, the degree of success obtained, is "the most critical factor in determining the reasonableness of a fee award." *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1085 (quoting *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 796 (S.D. Tex. 2008)). The Court has already noted that class counsel obtained a fair and reasonable settlement that the Court values at nearly $27 million, a highly favorable result in light of the potential risks of data breach cases. Nevertheless, many of these class members, by their own inaction, will lose their ability to bring future claims without receiving this benefit. As a result, much of the value of the settlement will not be put to use. Instead, assuming that each of the 500 claims are valid and seek the maximum possible cash compensation and credit monitoring, class members would collect a little over $2 million in benefits. The Court does not fault class counsel for the low claim rate and recognizes that the value obtained for the members seeking benefits is still substantial. Accordingly, the Court finds that this factor supports a positive modifier.

### x.    Experience, Reputation, and Ability of Attorneys

Under the ninth *Johnson* factor, courts look to the experience, reputation, and ability of the attorneys.  *Id.*  Here, class counsel is highly skilled and experienced in this area, which is evident from their ability to quickly obtain a favorable result.  This factor supports a positive modifier.

### xi.    Undesirability of the Case

The last remaining *Johnson* factor looks at the undesirability of the case.  *Id.*  Class counsel notes various factors that can make this type of case unappealing—they are complex and unlikely to produce favorable results for plaintiffs if the case progresses to late litigation stages.  *See* Dkt. No. 39 at 18–19.   Nevertheless, the number of data breach cases undercuts some of these claims.  *See, e.g.*, *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1085.  That said, it is unclear that this particular data breach was appealing to plaintiffs' attorneys, and the Court is unaware of any other litigation concerning it.  *Cf. id.*  Accordingly, the Court finds that this factor also supports a positive modifier of the lodestar.

*    *    *

In conclusion, having considered the twelve *Johnson* factors, the Court finds that a positive modifier of 2.4 to the lodestar is appropriate.  As a result, the Court concludes the class counsel's request for $262,500 in attorneys' fees, $10,360.78 of which is reasonable costs, is reasonable under both the percentage and *Johnson* factors methods.  The Court therefore grants the motion for attorneys' fees and costs.  Dkt. No. 38.

6.    **Conclusion**

In light of the foregoing, the Court grants the motions for final approval of the settlement and for attorneys' fees, costs, and the service award.  Dkt. Nos. 38; 42. Accordingly, the Court orders as follows:

1.    The Court has jurisdiction over the subject matter of this Litigation and over all claims raised therein and all Parties thereto, including the Settlement Class.

2.    The Settlement does not constitute an admission of liability by Defendant, and the Court expressly does not make any finding of liability or wrongdoing by Defendant.

3.    Unless otherwise indicated, words spelled in this Order Granting Final Approval of Class Action Settlement ("Final Order and Judgment") with initial capital letters have the same meaning as set forth in the Settlement Agreement.

4.    The Court, having reviewed the terms of the Settlement Agreement submitted by the Parties pursuant to Federal Rule of Civil Procedure 23(e)(2), grants final approval of the Settlement Agreement and for purposes of settlement and this Final Order and Judgment only, the Court hereby finally certifies the following Settlement Class:

> All persons who were sent written notification by Defendant that their Private Information was potentially compromised as a result of the Data Incident Defendant determined took place in July 2022.
>
> Specifically excluded from the Settlement Class are:
>
> (i) Defendant, the Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly requested exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge.

5.    The Settlement was entered into in good faith following arm's length negotiations and is non-collusive.  The Settlement is in the best interests of the Settlement

Class and is therefore approved.  The Court finds that the Parties faced significant risks, expenses, delays, and uncertainties, including as to the outcome, including on appeal, of continued litigation of this complex matter, which further supports the Court's finding that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class Members.  The Court finds that the uncertainties of continued litigation in both the trial and appellate courts, as well as the expense associated with it, weigh in favor of approval of the settlement reflected in the Settlement Agreement.

6.    The Settlement Agreement provides for Settlement benefits as set forth in Section 2 of the Settlement Agreement.

7.    The Court readopts and incorporates herein by reference its preliminary conclusions as to the satisfaction of Federal Rule of Civil Procedure 23(a) and (b)(3) set forth in the Preliminary Approval Order, its conclusions stated above in this Final Order and Judgment, and notes that because this certification of the Settlement Class is in connection with the Settlement Agreement rather than litigation, the Court need not address any issues of manageability that may be presented by certification of the class proposed in the Settlement Agreement.

8.    The terms of the Settlement Agreement are fair, adequate, and reasonable and are hereby approved, adopted, and incorporated by the Court.  Notice of the terms of the Settlement, the rights of Settlement Class Members under the Settlement, the Final Fairness Hearing, Plaintiff's application for attorneys' fees, costs, and expenses, and the Service Award payment to the Class Representative have been provided to Settlement Class Members as directed by this Court's Orders, and proof of Notice has been filed with the Court.

9.      The Court finds that the notice program, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order, was the best notice practicable under the circumstances, was reasonably calculated to provide and did provide due and sufficient notice to the Settlement Class of the pendency of the Litigation, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and their right to object and to appear at the Final Fairness Hearing or to exclude themselves from the Settlement Agreement, and satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and other applicable law.

10.      The Court finds that Defendant has fully complied with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

11.      As of the Opt-Out deadline, 8 potential Settlement Class Members submitted timely and valid requests to be excluded from the Settlement.  Their names are set forth in Exhibit A to this Final Order and Judgment.  Those persons are not bound by the Settlement Agreement and this Final Order and Judgment and shall not be entitled to any of the benefits afforded to the Settlement Class Members under the Settlement Agreement, as set forth in the Settlement Agreement.

12.      No Settlement Class Member filed an objection to the Settlement.

13.      Because no Settlement Class Member objected to the Settlement Agreement in the manner provided in the Settlement Agreement, all Settlement Class Members are deemed to have waived any objections by appeal, collateral attack, or otherwise.

14.      The Court has considered all the documents filed in support of the Settlement, and has fully considered all matters raised, all exhibits and affidavits filed, all evidence

received at the Final Fairness Hearing, all other papers and documents comprising the record herein, and all oral arguments presented to the Court.

15.     The Parties, their respective attorneys, and the Claims Administrator are hereby directed to consummate the Settlement in accordance with this Final Order and Judgment and the terms of the Settlement Agreement.

16.     Pursuant to the Settlement Agreement, Defendant, the Claims Administrator, and Class Counsel shall implement the Settlement in the manner and timeframe as set forth therein.

17.     Within the time period set forth in the Settlement Agreement, the relief provided for in the Settlement Agreement shall be made available to the Settlement Class Members who submitted valid Claim Forms, pursuant to the terms and conditions of the Settlement Agreement.

18.     The Court approves the Releases provided in the Settlement Agreement and orders that, as of the Effective Date, the Released Claims will be released as to the Released Persons and as set forth in Section 6 of the Settlement Agreement.  Plaintiffs and Settlement Class Members release all Released Claims as set forth in Section 6 of the Settlement Agreement.

19.     Neither Defendant nor their Related Entities shall have or shall be deemed to have released, relinquished, or discharged any claim or defense against any Person other than Plaintiff, the Settlement Class Members, and Class Counsel.  In addition, none of the releases in the Settlement Agreement shall preclude any action to enforce the terms of the Settlement Agreement by Plaintiff, Settlement Class Members, Class Counsel, and/or Defendant or Defendant's counsel.

20.     The Court grants final approval to the appointment of Plaintiff as Class Representative.  The Court concludes that Class Representative has fairly and adequately represented the Settlement Class and will continue to do so.

21.     Pursuant to the Settlement Agreement, and in recognition of their efforts on behalf of the Settlement Class, the Court approves a payment to the Class Representative in the amount of $2,500 as a Service Award.  Defendant shall make such payment in accordance with the terms of the Settlement Agreement.

22.     The Court grants final approval to the appointment of Raina Borrelli of the law firm Strauss Borrelli PLLC as Class Counsel and of Joe Kendall of the law firm Kendall Law Group as local counsel.  The Court concludes that Class Counsel has adequately represented the Settlement Class and will continue to do so.

23.     The Court, after careful review of the fee petition filed by Class Counsel, and after applying the appropriate standards required by relevant case law, hereby grants Class Counsel's application for combined attorneys' fees, costs, expenses in the amount of $262,500.  Payment shall be made pursuant to the terms of the Settlement Agreement.

24.     This Final Order and Judgment and the Settlement Agreement, and all acts, statements, documents, or proceedings relating to the Settlement Agreement are not, and shall not be construed as, used as, or deemed to be evidence of, an admission by or against Defendant of any claim, any fact alleged in the Litigation, any fault, any wrongdoing, any violation of law, or any liability of any kind on the part of Defendant's or of the validity or certifiability for litigation of any claims that have been, or could have been, asserted in the lawsuit.  This Final Order and Judgment, the Settlement Agreement, and all acts, statements, documents, or proceedings relating to the Settlement Agreement shall not be

offered or received or be admissible in evidence in any action or proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing of any nature or that Plaintiff, any Settlement Class Member, or any other person has suffered any damage; provided, however, that the Settlement Agreement and this Final Order and Judgment may be filed in any action by Defendant, Defendant's counsel, Class Counsel, or Settlement Class Members seeking to enforce the Settlement Agreement or the Final Order and Judgment (including, but not limited to, enforcing the releases contained herein). The Settlement Agreement and Final Order and Judgment shall not be construed or admissible as an admission by Defendant that Plaintiff's claims or any similar claims are suitable for class treatment. The Settlement Agreement's terms shall be forever binding on, and shall have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings as to Released Claims and other prohibitions set forth in this Final Order and Judgment that are maintained by, or on behalf of, any Settlement Class Member or any other person subject to the provisions of this Final Order and Judgment.

25.     If the Effective Date, as defined in the Settlement Agreement, does not occur for any reason, this Final Order and Judgment and the Preliminary Approval Order shall be deemed vacated and shall have no force and effect whatsoever; the Settlement Agreement shall be considered null and void; all of the Parties' obligations under the Settlement Agreement, the Preliminary Approval Order, and this Final Order and Judgment and the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated nunc pro tunc, and the Parties shall

be restored to their respective positions in the Litigation, as if the Parties never entered into the Settlement Agreement (without prejudice to any of the Parties' respective positions on the issue of class certification or any other issue).  In such event, the Parties will jointly request that all scheduled Litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Party or Party's counsel.  Further, in such event, Defendant will pay amounts already billed or incurred for costs of notice to the Settlement Class, and Claims Administration, and will not, at any time, seek recovery of same from any other Party to the Litigation or from counsel to any other Party to the Litigation.

26.    Pursuant to the All Writs Act, 28 U.S.C. § 1651, this Court shall retain the authority to issue any order necessary to protect its jurisdiction from any action, whether in state or federal court.

27.    Without affecting the finality of this Final Order and Judgment, the Court will retain jurisdiction over the subject matter and the Parties with respect to the interpretation and implementation of the Settlement Agreement for all purposes.

28.    This Order resolves all claims against all Parties in this action and is a final order.

29.    The matter is hereby dismissed with prejudice and without costs except as provided in the Settlement Agreement.

The Clerk of Court is directed to close this case.

So ordered, adjudged, and decreed on July 31, 2024.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE